**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT
WESTERN DIVISION**

| | | |
|---|---|---|
| In Re: | * | Case No.1:18-bk-14408 |
| | * | Judge Jeffrey P. Hopkins |
| Flipdaddy's, LLC | * | Chapter 11 Proceeding |
| | * | |
| | * | |
| Debtor | * | |

**MOTION OF THE DEBTOR FOR AN ORDER, PURSUANT
TO 11 U.S.C. §§ 105(a) AND 365(a) AND FED. R. BANKR. P. 6006,
TO (1) ASSUME AN EXECUTORY CONTRACT WITH
GORDON FOOD SERVICE, INC., (2) ESTABLISH THE CURE
AMOUNT AND (3) PROCEDURES RELATED THERETO**

Now comes, Flipdaddy's, LLC, (the "Debtor") by and through undersigned counsel and by this "Motion" seeks the Entry of an Order, pursuant to 11 U.S.C. §§ 105(a) and 365(a) (the "Bankruptcy Code"), and Federal Rule of the Bankruptcy Code 6006 (the "Bankruptcy Rules"), authorizing the Debtor to (1) Assume an Executory Contract with Gordon Food Service, Inc.. ("GFS"), to (2) Establish the Cure Amount and (3) Approve the Procedures Related thereto.

In support of this Motion, the Debtor hereby states as follows:

**JURISDICTION AND VENUE**

1) This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

1

2) The statutory predicate for the relief requested in this Motion is 11 U.S.C. §§ 105 and 365(a) and Rule 6006 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

3) The Debtor is a limited liability company formed under the laws of the state of Ohio.

4) On December 6, 2018, the Debtor commenced this case by filing a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

5) At the time of the filing of this Motion, no committee has been appointed under 11 U.S.C. § 1102.

6) As of the commencement of this case, the Debtor became entitled to operate and manage its property as a debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

## THE MASTER DISTRIBUTION AGREEMENT TO BE ASSUMED

7) At the commencement of this case, the Debtor was a party to a Master Distribution Agreement with GFS executed on July 14, 2016 (the "MDA"). The term of the MDA is from August 1, 2016 through July 31, 2023. The MDA contains proprietary and confidential pricing information and therefore has not been attached to this Motion but will be made available to the Court upon request and, with the consent of GFS, to other parties-in-interest upon reasonable request.

8) Since the commencement of this case, GFS has continued to supply the Debtor under the MDA on a prepay basis.

9) Pursuant to the terms of the MDA, GFS is appointed the primary distributor to the restaurant locations of the Debtor as well as any locations that may be opened in the GFS distribution territory. Pursuant to this provision, GFS also provided goods and services to a restaurant located at 22421 Perdido Beach Blvd., Orange Beach, Alabama, a wholly-owned subsidiary of the Debtor ("Flipdaddy's Alabama").

10) Pursuant to the terms of the MDA, the Debtor receives from GFS a fixed sale price for products and goods, distribution service terms, including base rates for delivery costs, incentive rebates based on total purchase and attainment of certain tier levels as well as other benefits based on arrangements granted to GFS under Supplier Agreements and Distribution Services Agreements.

11) If the Debtor is not allowed to assume the MDA, GFS might exercise its right under the MDA to cease providing goods and services based upon the Debtor's postpetition defaults. It would take a minimum of 5-6 weeks to obtain a replacement supplier providing the scope of services that GFS provides and, during such time period, the Debtor's operations would be required to close, causing irreparable harm and resulting in the liquidation of the estate. In addition, the Debtor would more than likely not gain similar benefits as are provided under Paragraph Two (2) under such circumstances and would also be subject to a claim and obligation to repay a prorated portion of a signing bonus pursuant to Section 14.3 of the MDA. Therefore, it is critical to the Debtor's reorganization that the MDA be assumed.

## THE CURE AMOUNT

12) As of the commencement of the case, GFS was owed under the MDA for goods provided prepetition to various Debtor-owned restaurant locations, including goods and services provided to Flipdaddy's Alabama, the sum of $321,403.14 (the "Prepetition Claim").

13) The Prepetition Claim is made up as follows:

   a. $98,125.07 is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9) for goods that were delivered to the Debtor within the 20 days prior to the commencement of this case (the "503(b)(9) Claim");
   b. $46,393.15 is for goods that qualify as "perishable agricultural commodities" under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a *et seq.* ("PACA Claim"); and
   c. $176,884.92 is a general unsecured claim (the "Unsecured Claim").

14) In order to assume and cure the default under the MDA, the Debtor must pay the entire Prepetition Claim.

## THE PROPOSED TERMS AND PROCEDURES FOR SATISFYING THE CURE AMOUNT

15) There has been created for purposes of facilitating, funding and implementing the Plan, an entity known as FDXII, LLC, an Ohio limited liability company, which in turn has entered into a Contribution and Backstop Commitment Agreement.

16) The Debtor and GFS have agreed to the following timeline for payment of the required cure amount which terms will also be included in any proposed plan:

   a. The Debtor shall continue to prepay for all goods to be delivered to the Debtor until confirmation of the Plan. Upon the Effective Date of a confirmed plan, GFS will grant to the reorganized debtor seven-day credit terms with automatic weekly EFT. GFS reserves and does not waive any of its rights under the MDA, including, but not limited to, the right to shorten or revoke credit terms or terminate service based upon any default by the Debtor or reorganized debtor or any change in the Debtor or reorganized debtor's creditworthiness in GFS' sole discretion. Any change in credit

terms imposed by GFS shall not in any way affect the Debtor's or reorganized debtor's obligation to pay the remaining cure amounts set forth herein.

b. The PACA Claim shall be paid in full within seven (7) days of the entry of an order granting this motion. Such payment shall be an obligation of the Debtor and may be made by FDXII, LLC as part of the Contribution and Backstop Commitment Agreement.

c. The 503(b)(9) Claim shall be paid in full on or before June 27, 2019. Such payment shall be an obligation of the Debtor and may be made by FDXII, LLC as part of the Contribution and Backstop Commitment Agreement.

d. The Unsecured Claim shall be paid in full under the terms set forth in this subparagraph. A payment in the amount of $50,000.00 shall be made within five (5) business days of the entry of an order confirming a plan. Simultaneously with that payment, the reorganized debtor shall issue to GFS a note, secured by all of the reorganized debtor's assets, in the amount of $126,884.92 (the "Secured GFS Note"). Within 30 days of the entry of an order confirming a plan, the reorganized debtor shall commence payments of a minimum of $5,000.00 per month toward repayment of the Secured GFS Note with the terms of such payments to include that any such payments shall be received by GFS not later than the 25th day of each month, with the balance to be paid in full by January 27, 2020. If the balance is paid in full by December 27, 2019, then all accrued interest will be waived by GFS. If the balance is not paid in full by December 27, 2019, then in addition to any balance remaining, there shall also be due all accrued and unpaid interest remains due and owing.

## RELIEF AND BASIS FOR RELIEF REQUESTED

17) By this Motion, the Debtor request that the Court enter an order, pursuant to 11 U.S.C. §§ 105(a) and 365(a), and Bankruptcy Rule 6006, authorizing the Debtor to assume the MDA and to also approve the proposed terms and procedures for satisfying the cure amount. A proposed order is attached as Exhibit A.

18) In the exercise of its business judgment, and for the reasons set forth in Paragraph Eleven above, the Debtor's management has determined that the inability to assume the MDA would place the entire business operation of the Debtor in jeopardy of

closing. Even if the Debtor were able to continue operations and the MDA is not assumed, the Debtor would still be obligated for the §503(b)(9) Claim and the PACA Claim. Therefore, the Debtor has determined, in the exercise of its business judgment, that it is in the best interests of its estate, creditors and stakeholders to assume the MDA.

## APPLICABLE AUTHORITY

19) Bankruptcy Code section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a); *see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).

20) A debtor's determination on rejection or assumption of any executory contract and lease agreements is governed by the "business judgment" standard. *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003)

21) Once a debtor articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

22) The business judgment rule has vitality in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 615-16

(Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.").

23) As set forth above, the Debtor clearly has satisfied the "business judgment" standard for assumption of the MDA and reflects the Debtor's exercise of its sound business judgment.

## NO PRIOR REQUESTS

24) Debtor represents that no previous request for the relief sought herein has been made to this Court or any other court.

**WHEREFORE** the Debtor respectfully request that the Court Grant its Motion, and authorize the Debtor to assume, pursuant to 11 U.S.C. §§ 105(a) and 365(a), and Bankruptcy Rule 6006, the MDA, to approve the cure arrangements, and that the Court enter such other relief in favor of the Debtor as it deems to be just and equitable.

Respectfully submitted

*/s/Steven L. Diller*
Steven L. Diller (0023320)
Diller & Rice, LLC
Attorneys for Debtor
124 E. Main Street
Van Wert, Ohio  45891
Phone: (419) 238-5025
Fax: (419) 238-4705
steven@drlawllc.com

### NOTICE OF FILING OF MOTION TO ASSUME THE MASTER DISTRIBUTION AGREEMENT, THE CURE AMOUNT, THE PROPOSED TERMS AND PROCEDURES FOR SATISFYING THE CURE AMOUNT AND THE OPPORTUNITY TO OBJECT

Flipdaddy's, LLC, Debtor in this case, has filed a Motion seeking an Entry of an Order, pursuant to 11 U.S.C. §§ 105(a) and 365(a) (the "Bankruptcy Code"), and Federal Rule of the Bankruptcy Code 6006 (the "Bankruptcy Rules"), authorizing the Debtor to authorizing the Debtor to (1) Assume an Executory Contract with Gordon Food Service, Inc.. ("GFS"), to (2) Establish the Cure Amount and (3) Approve the Procedures Related thereto with such assumption to be effective as of the Petition Date. ("the Motion") **<u>Your rights may be affected</u>**. **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case**. If you do not have any attorney, you may wish to consult one. If you do not want the Court to enter an order authorizing assume the Executory Contract with GFS or if you want the Court to consider your views on the Motion, then on or before twenty-one (21) days from the date listed on the Certificate of Service below, you or your attorney must file with the Court a written response outlining your position and/or a written request for a hearing. If you mail your response/request to the Court, you must mail it early enough so the Court will receive it on or before the date stated above. You must also mail a copy to:

>Flipdaddy's, LLC
>7453 Wooster Pike
>Cincinnati, Ohio 45227
>
>Steven L. Diller
>Diller & Rice, LLC
>124 East Main Street
>Van Wert, OH 45891
>
>Office of the United States Trustee
>36 East Seventh St.
>Suite 2030
>Cincinnati, OH 45202

If the court sets a hearing on your response/request, you must also attend the hearing.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Application and may enter an order granting that relief.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the Motion Authorizing the Debtor to (1) Assume an Executory Contract with Gordon Food Service, Inc.. ("GFS"), to (2) Establish the Cure Amount and (3) Approve the Procedures Related thereto with such assumption to be effective as of the Petition Date, as Bankruptcy Counsel to the Debtor combined with Notice and Opportunity to Object has been served on the United States Trustee and electronic filing in compliance with the ECF rules in place in this District, and upon the following by ordinary U.S. Mail, postage prepaid on this 14th day of May, 2019.

/s/Steven L. Diller
Steven L. Diller

**Notice was electronically served on the date of entry on the following recipients:**

Asst US Trustee (Cin)
ustpregion09.ci.ecf@usdoj.gov

John C Cannizzaro on behalf of Creditor Gordon Food Service, Inc
John.Cannizzaro@icemiller.com, Thyrza.Skofield@icemiller.com

Casey M Cantrell Swartz on behalf of Interested Party Myers Y Cooper Company
cswartz@taftlaw.com, docket@taftlaw.com;lsutton@taftlaw.com

Rocco I Debitetto on behalf of Creditor IRC Newport Pavilion, LLC
ridebitetto@hahnlaw.com, hlpcr@hahnlaw.com;cmbeitel@hahnlaw.com

Rocco I Debitetto on behalf of Creditor IRC Retail Centers LLC
ridebitetto@hahnlaw.com, hlpcr@hahnlaw.com;cmbeitel@hahnlaw.com

Gregory D Delev on behalf of Creditor Ohio Department of Taxation
bankruptcy@delevlaw.com

Steven L Diller on behalf of Debtor In Possession Flipdaddy's, LLC
steven@drlawllc.com, kim@drlawllc.com;eric@drlawllc.com

Barry F Fagel on behalf of Creditor Bryant Hartke Construction
bfagel@lindhorstlaw.com

Douglas N Hawkins on behalf of U.S. Trustee Asst US Trustee (Cin)
doug.hawkins@usdoj.gov, cathy.cooper@usdoj.gov

Benjamin M Rodriguez on behalf of Creditor The Park National Bank
brodriguez@fp-legal.com, kmorales@fp-legal.com

John A Schuh on behalf of Creditor Ford Motor Credit Company, LLC
jaschuhohecf@swohio.twcbc.com

Jason M Torf on behalf of Creditor Gordon Food Service, Inc
jason.torf@icemiller.com

**Notice was mailed to:**

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern, PA 19355-0702

BDO USA, LLP
Laurence W Goldberg, Dir, Receivables Mg
4135 Mendenhall Oaks Parkway
Suite 140
High Point, NC 27265

Greater Comfort Heating & Air
2001 Monmouth Street
Newport, KY 41071