# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Flipdaddy's, LLC., | ) | Case No. 1:18-bk-14408 |
| | ) | |
| Debtor. | ) | Chief Judge Jeffrey P. Hopkins |
| | ) | |

## THE CHAPTER 11 PLAN OF
## REORGANIZATION OF FLIPDADDY'S, LLC

_____

DILLER  & RICE, LLC
Steven L. Diller (0023320)
124 E. Main Street
Van Wert, Ohio  45891
Telephone (419) 238-5025
Facsimile (419) 238-4705
E-mail: steven@drlawllc.com

Attorneys for Flipdaddy's, LLC
Debtor-in-Possession

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,**
**GOVERNING LAW, AND OTHER REFERENCES..................................................................1**
A.    Defined Terms ........................................................................................................1
B.    Rules of Interpretation .........................................................................................8
C.    Computation of Time .............................................................................................8
D.    Governing Law .......................................................................................................8
E.    Reference to Monetary Figures .............................................................................9
F.    Reference to the Debtor or the Reorganized Debtor ............................................9
G.    Controlling Document ...........................................................................................9

**ARTICLE II. ADMINISTRATIVE AND PRIORITY CLAIMS.............................................9**
A.    Administrative Claims ...........................................................................................9
B.    Professional Fee Claims.........................................................................................9
C.    Priority Tax Claims ...............................................................................................10
D.    Statutory Fees........................................................................................................10

**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS..........10**
A.    Classification of Claims and Interests...................................................................10
B.    Treatment of Classes of Claims and Interests .....................................................11
C.    Special Provision  Governing Unimpaired Claims ...............................................14
D.    Elimination of Vacant Classes ..............................................................................14
E.    Voting Classes; Presumed Acceptance by Non-Voting Classes .........................15
F.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................15

**ARTICLE IV. PROVISIONS FOR IMPLEMENTATION OF THE PLAN......................................15**
A.    General Settlement of Claims, Interests, and Causes of Action...........................15
B.    Transactions on the Effective Date.......................................................................15
C.    New Gordon Food Service Secured Loan ..........................................................15
D.    Issuance and Distribution of New Membership Interests.....................................16
E.    Issuance and Distribution of. New Warrants........................................................16
F.    Rights Offering ......................................................................................................16
G.    Exit Facility ...........................................................................................................17
H.    Management Incentive Plan...................................................................................17
I.    Management of the Reorganized Company ..........................................................17
J.    Exemption from Registration Requirements.........................................................17
K.    Vesting of Assets ..................................................................................................17
L.    Cancellation of Instruments, Certificates, and Other Documents .......................17
M.    Corporate Action....................................................................................................17
N.    Corporate Existence ..............................................................................................18
O.    New Organizational Documents ...........................................................................18
P.    Effectuating Documents; Further Transactions.....................................................18
Q.    Section 1146(a) Exemption....................................................................................19
R.    Directors and Officers............................................................................................19
S.    Employee Arrangements of the Reorganized Debtors .........................................19
T.    Preservation of Causes of Action..........................................................................20

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES .....................20**
A.    Assumption or Rejection of Executory Contracts and Unexpired Leases....................20
B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases....................20
C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases................21

**TABLE OF CONTENTS (CONT'D)**

**Page**

| | | |
|---|---|---:|
| D. | Indemnification | 21 |
| E. | Insurance Policies | 22 |
| F. | Contracts and Leases After the Petition Date | 22 |
| G. | Reservation of Rights | 22 |
| H. | Nonoccurrence of Effective Date | 22 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** .................................................**22**
| | | |
|---|---|---:|
| A. | Distributions on Account of Claims and Interests Allowed as of the Effective Date | 23 |
| B. | Rights and Powers of the Distribution Agent | 23 |
| C. | Special Rules for Distributions to Holders of Disputed Claims | 23 |
| D. | Delivery of Distributions | 23 |
| E. | Claims Paid or Payable by Third Parties | 25 |
| F. | Setoffs | 25 |
| G. | Allocation Between Principal and Accrued Interest | 25 |

**ARTICLE VII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS** ...............................**26**
| | | |
|---|---|---:|
| A. | Allowance of Claims | 26 |
| B. | Claims Administration Responsibilities | 26 |
| C. | Estimation of Claims | 26 |
| D. | Adjustment to Claims Without Objection | 26 |
| E. | Time to File Objections to Claims | 26 |
| F. | Disallowance of Claims | 26 |
| G. | Amendments to Claims | 27 |
| H. | No Distributions Pending Allowance | 27 |
| I. | Distributions After Allowance | 27 |

**ARTICLE VIII. EFFECT OF CONFIRMATION OF THE PLAN** .............................................**27**
| | | |
|---|---|---:|
| A. | **Discharge of Claims and Termination of Interests** | 27 |
| B. | **Releases by the Debtor.** | 28 |
| C. | **Releases by Holders of Claims and Interests** | 28 |
| D. | **Exculpation** | 29 |
| E. | **Injunction** | 29 |
| F. | Protection Against Discriminatory Treatment | 29 |
| G. | Release of Liens | 30 |
| H. | Reimbursement or Contribution | 30 |
| I. | Recoupment | 30 |
| J. | Subordination Rights | 30 |

**ARTICLE IX. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ..............................**30**
| | | |
|---|---|---:|
| A. | Conditions Precedent to the Effective Date | 30 |
| B. | Waiver of Conditions | 31 |
| C. | Effect of Non-Occurrence of Conditions to Consummation | 31 |
| D. | Substantial Consummation | 31 |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**...............**32**
| | | |
|---|---|---:|
| A. | Modification of Plan | 32 |
| B. | Effect of Confirmation on Modifications | 32 |
| C. | Revocation or Withdrawal of Plan | 32 |

**ARTICLE XI. RETENTION OF JURISDICTION** .................................................................**32**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ..............................................................**34**
| | | |
|---|---|---:|
| A. | Immediate Binding Effect | 34 |
| B. | Additional Documents | 34 |
| C. | Payment of Statutory Fees | 34 |

### TABLE OF CONTENTS (CONT'D)

**Page**

| | | |
|---|---|---|
| D. | Reservation of Rights | 34. |
| E. | Successors and Assigns | 34 |
| F. | Service of Documents | 34 |
| G. | Term of Injunctions or Stays | 34 |
| H. | Entire Agreement | 35 |
| I. | Plan Supplement | 35. |
| J. | Non-Severability | 35 |
| K. | Votes Solicited in Good Faith | 35. |
| L. | Closing of Chapter 11 Case | 35 |
| M. | Waiver or Estoppel | 36 |

iii.

## INTRODUCTION

Flipdaddy's, LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case proposes this chapter 11 plan of reorganization pursuant to chapter 11 of title 11 of the United States Code. Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I. A. hereof.

Reference is made to the accompanying *Disclosure Statement for the Chapter 11 Plan of Reorganization of Flipdaddy's, LLC* for a discussion of the Debtor's history, business, operations, valuation, projections, risk factors, a summary and analysis of the Plan and the transactions contemplated thereby, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A.    *Defined Terms*

1.    "*Administrative Claim*" means a Claim incurred by the Debtors on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 Case entitled to priority under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtor's businesses; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 45 days after the Effective Date.

3.    "*Affiliate*" means, with respect to any Person, all Persons that would fall within the definition assigned to such term in section 101(2) of the Bankruptcy Code, if such Person was a debtor in a case under the Bankruptcy Code.

4.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or such other date as agreed by the Debtors pursuant to the Bar Date Order) or a request for payment of an Administrative Claim Filed by the Administrative Claims Bar Date, as applicable (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order, a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order; *provided*, that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim has been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes the applicable Debtor or Reorganized Debtor, as applicable. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, as applicable, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "Allow" and "Allowing" shall have correlative meanings.

5.        "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code.

6.        "*Backstop Commitment Agreement*" means that certain contribution and backstop commitment agreement, entered into as of March 15, 2019, pursuant to which the Backstop Commitment Parties have agreed to Backstop certain obligations and claims of the Plan and which may also be referred to as the Contribution and Backstop Commitment Agreement.

7.        "*Backstop Commitment Parties*" means at any time and from time to time, the parties that are signatories and have contributed to the Contribution and Backstop Commitment Agreement and those Entities and individuals that are signatories and have committed to backstop certain obligations and claims of the Plan, solely in their capacities as such, to the extent provided in the Contribution and Backstop Commitment Agreement.

8.        "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

9.        "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Ohio, Western Division, having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of Ohio.

10.        "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code, and the general, local rules of the Bankruptcy Court.

11.        "*Bar Date*" means the date established by the Bankruptcy Court by which Proofs of Claim must be filed with respect to such Claims, as ordered by the Bankruptcy Court.

12.        "*Bar Date Order*" means the order of the Bankruptcy Court establishing the Claims Bar Date for general Claims of March 21, 2019.  [Docket No. 57].

13.        "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

14.        "*Causes of Action*" means any claims, Claims, Interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise. Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

15.        "*Chapter 11 Case*" means this case which is pending under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

16.        "*Claim*" has the meaning set forth in section 101(5) of the Bankruptcy Code.

17.        "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed, as established by: (a) the Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) the Plan.

18.        "*Class*" means a category of Holders of Claims or Interests pursuant to section 1122(a) of the Bankruptcy Code.

19.        "*Company*" means Flipdaddy's, LLC.

20.      "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

21.      "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

22.      "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

23.      "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall otherwise be in form and substance reasonably acceptable to the Debtor and the Backstop Commitment Parties.

24.      "*Contribution and Backstop Commitment Agreement*" means that certain contribution and backstop commitment agreement, entered into as of March 15, 2019, pursuant to which the Backstop Commitment Parties have agreed to Backstop certain obligations and claims of the Plan and which may also be referred to as the Backstop Commitment Agreement.

25.      "*Consummation*" means the occurrence of the Effective Date.

26.      "*Convertible Note*" means notes issued by the Debtor in exchange for a pre-existing loan to the Debtor which in addition to interest also includes a right of conversion to an *Existing Class B Membership Interests.*

27.      "*Convertible Note Holder*" means the holder of a Convertible Note issued by the Debtor.

28.      "*Creditor*" has the meaning set forth in section 101(10) of the Bankruptcy Code.

29.      "*Cure*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default(s) under an Executory Contract or an Unexpired Lease assumed by the Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

30.      "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors current or former directors', managers', officers', and employees' liability.

31.      "*Debtor*" means, Flipdaddy's, LLC.

32.      "*Definitive Documents*" has the meaning ascribed to such term in the Contribution and Backstop Commitment Agreement.

33.      "*Disallowed*" means any Claim that is not Allowed.

34.      "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules thereto, which disclosure statement shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall otherwise be in form and substance reasonably acceptable to the Debtor and the Backstop Commitment Parties.

35.      "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court approving the Disclosure Statement.

36.      "*Disputed*" means, as to a Claim or an Interest, any Claim or Interest: (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; (c) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law; (d) that is Filed in the Bankruptcy Court and not withdrawn, as to which a timely objection or request for estimation has been Filed; and (e) with respect to which a party in interest has Filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court.

37.  "*Distribution Agent*" means, the Reorganized Debtor or any Entity the Reorganized  Debtor selects to make or to facilitate distributions in accordance with the Plan.

38.  "*Distribution Date*" means the date or dates determined by the Debtor or the Reorganized Debtor, on or after the Effective  Date, upon which the Distribution Agent shall make distributions to Holders of Allowed Claims and Interests entitled  to receive distributions under the Plan.

39.  "*Effective Date*" means the first business day that is more than thirty (30) after the Confirmation Date on which  all conditions precedent to the occurrence of the Effective Date of the Plan have been satisfied.

40.  "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

41.  "*Estate*" means, the estate created for the Debtor pursuant to section 541 of the  Bankruptcy Code upon the commencement of the Debtor's Chapter 11 Case.

42.  "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtor and the Reorganized Debtor; and (b) the Backstop Commitment Parties and (c) with respect to each of the  foregoing Entities in clauses (a) and (b), each of their respective current and former directors, officers, members,  employees, partners, managers, independent contractors, agents, representatives, principals, professionals,  consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors.

43.  "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

44.  "*Existing Common Interests*" means the Interests in Flipdaddy's, LLC arising from or related to the Existing  Membership Interests.

45.  "*Existing Class A Membership Interests*" means the voting interests in  Flipdaddy's, LLC arising from or related to the Existing  Membership Interests.

46.  "*Existing Class B Membership Interests*" means the preferred investment, non-voting interests in Flipdaddy's, LLC arising from or related to the Existing  Membership Interests.

47.  "*Existing Membership Interests*" means the shares of Membership Interests issued by the Company.

48.   "*Existing Membership Interests Holder Subscription Rights*" means the non-certificated rights to be  distributed to each Holder of Existing Class B Membership Interests that will enable each holder thereof to purchase its Pro Rata share of 25% of the New Membership Interests, subject to dilution by the New Membership Interests issued in connection  with the Management Incentive Plan and pursuant to the terms of the Rights Offering Procedures and the Backstop Commitment Agreement.

49.  "*Exit Facility Documents*" means the Contribution and Backstop Commitment Agreement distribution of the Contributed Funds to the Reorganized Debtor, which agreements and documents shall be consistent in all respects with, and shall contain, the terms and conditions  set forth in the in the Backstop Commitment Agreement and shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

50 .   "*File*," "*Filed*," and "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy

51.  "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

52.  "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari

could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice.

53.     "*General Unsecured Claim*" means any Claim that is not Secured and is not:  (a) an Administrative Claim; (b) a Professional Fee Claim; (c) a Priority Tax Claim; (d) an Other Priority Claim; (e) a Notes Claim; or (f) an Intercompany Claim.

54.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

55.      "*Holder*" means an Entity holding a Claim or Interest, as applicable.

56.     "*Impaired*" means, with respect to any Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

57.     "*Indemnification Provisions*" means the Debtor's indemnification provisions in place whether in the Debtor's bylaws, certificates of incorporation, other formation documents, board resolutions,  management or indemnification agreements, employment contracts, or otherwise, for the current and former directors,  officers, managers, employees, attorneys, other professionals, and agents of the Debtor.

58.     "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor, including any Claim against the Debtor arising from the issuance of a Convertible Note.

59.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

60.     "*Management Incentive Plan*" means a post-Effective Date management incentive plan, the terms of which shall be consistent in all respects with Article IV.H of the Plan and  otherwise be on terms reasonably acceptable to the Debtor and the and the Backstop Commitment Parties.

61.     "*New Membership Interests*" means the Membership Interests of Reorganized Debtor.

62.     "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents, of each of the Reorganized Debtors, which certificates or articles of incorporation, bylaws, or such other applicable formation documents shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

63.     "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

64.     "*The Company*" means Flipdaddy's, LLC.

65.     "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

66.     "*Petition Date*" means the date, if applicable, on which the Debtor commenced the Chapter 11

67.     "*Plan*" means this chapter 11 plan (as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes and attachments hereto), which shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall  otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

68.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than 14 days before the Confirmation Hearing, or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement, including the following, as applicable:  (a) the material New Organizational Documents; (b) a list of retained Causes of Action; (c) a disclosure of the members of the Reorganized Company Board; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Schedule of Rejected  Executory Contracts and Unexpired Leases; (f) the form of the  Management

Incentive Plan and (g) any other documents material to Exit Facility Documents. Such documents shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall otherwise be in form and substance reasonably acceptable to the Debtor and the Backstop Commitment Parties.

69     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

70.    "*Pro Rata*" means the proportion that an Allowed Claim or Existing Membership Interests in a particular Class bears to the aggregate amount of the Allowed Claims or Existing Membership Interests in that respective Class, or the proportion of the Allowed Claims or Existing Membership Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Existing Membership Interests.

71.    "*Professional*" means any Entity or individual employed in the Chapter 11 Case pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

72.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that Professionals estimate they have incurred or will incur in rendering services to the Debtor prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtor as set forth in Article II.B of the Plan.

73.    "*Professional Fee Claim*" means all Administrative Claims for the aggregate amount of compensation and other unpaid fees and expenses of Professionals that the Professionals estimate they have incurred or will incur in rendering services to the Debtor prior to and as of the Confirmation Date, which estimates such Professionals shall deliver to the Debtor as set forth in Article II.B of the Plan.

74.    "*Proof of Claim*" means a proof of Claim Filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

75.    "*Released Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtor and the Reorganized Debtor and (b) the Backstop Commitment Parties, each such Individual or Entity's current and former predecessors, successors, and (c) with respect to each of the foregoing Entities in clauses (a) through (b), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors.

76.    "*Releases*" means the releases provided for in Article VIII of the Plan.

77.    "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Backstop Commitment Parties (c) the holder of any Claims of any kind or nature under Class Eight (8) of the Plan; (l) with respect to each of the foregoing entities or individuals, each such Entity and Individual's current and former predecessors, successors, subsidiaries, their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors.

78.    "*Reorganized Debtor*" means the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto.

79.    "*Reorganized Flipdaddy's*" means the Debtor, as reorganized pursuant to and under the Plan, or any successor thereto.

80.    "*Reorganized Company Board*" means the board of directors of Reorganized Debtor on and after the Effective Date.

6

81.     "*Rights Offering*" means the distribution of Subscription Rights to the Rights Offering Participants, pursuant to which such Holders are eligible to purchase Rights Offering Shares in accordance with the Rights Offering Procedures.

82.     "*Rights Offering Offerees*" means, collectively, (i) the Holders of Existing B Membership Interests who have also Contributed under the Backstop Commitment Agreement and (ii) anyone who wishes to invest in order to acquire a Pro Rata share of twenty five (25) percent of the Reorganized Debtor in accordance with the Rights Offering Procedures.

83.     "*Rights Offering Participants*" means, collectively, i) the Holders of Existing B Membership Interests who have also Contributed under the Backstop Commitment Agreement and (ii) anyone who wishes to invest in order to acquire a Pro Rata share in accordance with the Rights Offering Procedures who duly subscribe for New Membership Interests in  accordance with the Rights Offering Procedures.

84.     "*Rights Offering Procedures*" means those certain rights offering procedures with respect to the Rights Offering, approved by the Disclosure Statement Order, which rights offering procedures shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

85.     "*Rights Offering Shares*" means, collectively, the shares of New Membership Interests issued in the Rights  Offering.

86.     "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any modifications or amendments thereto), if any, of certain Executory Contracts and Unexpired Leases assumed under prior Bankruptcy Court Order or to be assumed  by the Debtor pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtor from time to time in accordance with the Plan, which schedule shall be consistent in all respects with, and shall contain, the terms and  conditions set forth in the  Backstop Commitment Agreement and shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

87.     "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan or which have been previously the subject of a prior Bankruptcy Court order of rejection, as set forth in the Plan Supplement, as amended by the Debtors from time to time  in accordance with the Plan, which schedule shall be consistent in all respects with, and shall contain, the terms and  conditions set forth in the  Backstop Commitment Agreement and shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

88.     "*Schedules*" means, collectively, the schedules of assets and liabilities and statements of financial affairs Filed by the Debtors.

89.     "*Secured*" means, when referring to a Claim: (a) secured by a lien on property in which any of Debtors has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

90.     "*Solicitation Commencement Date*" means the date of distribution of the Solicitation Materials to Holders of Claims and Interests in Voting Classes.

91.     "*Solicitation Materials*" means, collectively, the solicitation materials with respect to the Plan, which solicitation materials shall be consistent in all respects with, and shall contain, the terms and conditions set forth in the Backstop Commitment Agreement and shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

92.      "*Subscription Rights*" means, collectively, the Existing Membership Interests Subscription Rights and the Rights Offering Participants Subscription Rights.

93.      "*Unclaimed Distribution*" means any distribution under the Plan on account of an Allowed Claim or Existing Interest to a Holder that has not: (a) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (b) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (c) responded to the Debtor's or Reorganized Debtor's requests for information necessary to facilitate a particular distribution; or (d) taken any other action necessary to facilitate such distribution.

94.      "*Unexpired Lease*" means a lease of nonresidential real property to which one the Debtors  is a party or guarantor of that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

95.      "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

96.       "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Ohio.

97.      "*Voting Classes*" has the meaning ascribed to such term in the Disclosure Statement Order.

B.      *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (5) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (6) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (7) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (8) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (9) references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time; (11) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (12) the words "include" and "including" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation," and (13) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan and without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a business day, then such transaction shall instead occur on the next succeeding business day.

D.      *Governing Law*

Except to the extent a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Ohio, without giving effect to conflict of laws principles.

E.       *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

F.       *Reference to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

G.       *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the applicable Plan Supplement Document shall control. In the event of an inconsistency between the Confirmation Order and any of the Plan, the Disclosure Statement, or the Plan Supplement, the Confirmation Order shall control. For the avoidance of doubt, the executed post-Effective Date Definitive Documents shall control the matters set forth therein in the event of a conflict between any such Definitive Document and any other document.

# ARTICLE II.
# ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article III of the Plan.

A.       *Administrative Claims*

Except to the extent that a Holder of an Allowed Administrative Claim and the Debtor against which such Allowed Administrative Claim is asserted agree to less favorable treatment for such Holder, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following: (1) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of their business after the Petition Date in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holders of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by such Holder and the Debtor or the Reorganized Debtor, as applicable; or (5) at such time and upon such terms as set forth in an order of the Bankruptcy Court.

B.       *Professional Fee Claims*

All requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed with the Bankruptcy Court no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Reorganized Debtor shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows.

From and after the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agree to a less favorable treatment for such Holder, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

D.      *Statutory Fees*

All fees due and payable pursuant to section 1930 of title 28 of the United States Code prior to the Effective Date shall be paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

A.      *Classification of Claims and Interests*

The Plan constitutes a plan proposed by the Debtor within the meaning of section 1121 of the Bankruptcy Code. Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Existing Interest in that Class and has not been paid, released, or otherwise satisfied or disallowed by Final Order prior to the Effective Date. For all purposes under the Plan, each Class will contain sub-Classes for the Debtor, as applicable; *provided*, that any Class that does not contain any Allowed Claims or Existing Interests with respect to the Debtor will be treated in accordance with Article III.D below.

Below is a chart assigning each Class a number for purposes of identifying each separate Class.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Secured Claims of Park National Bank | Impaired | Entitled to Vote |
| 2 | Secured Claim of Ford Motor Credit Co | Unimpaired | Deemed to Accept |
| 3 | Claims of Gordon Food Service | Impaired | Entitled to Vote |
| 4 | Backstop Acquired Claims of KTM, II | Impaired | Entitled to Vote |
| 5 | Secured Claims of M-2 Leasing | Unimpaired | Deemed to Accept |
| 6 | Assumed Executory Contracts | Unimpaired | Deemed to Accept |
| 7 | Unsecured Claims and Rejected Executory Contracts | Impaired | Entitled to Vote |
| 8 | Indemnification Claims of R. Dames | Impaired | Entitled to Vote |
| 9 | Equity Interests | Impaired | Entitled to Vote |

B.    *Treatment of Classes of Claims*

1.    Class 1 — Park National Bank

   a.    *Classification*:  Class 1 consists of all Park National Bank Claims against the Debtor.

   b.    *Treatment*:

       i.    The Claims of Park National Bank  shall be assumed by the Reorganized Debtor and paid according to terms of the original instrument, with the exception of the claim filed under Proof of Claim 19 in the amount of $250,000.00;

       ii.    This claim shall be reduced to $200,000 by a payment of $50,000.00 from the Debtor or FDXII under the Backstop Commitment Agreement and upon such payment the balance of $200,000 shall be re-amortized over 8 years and accrue interest at the rate of 6% per annum.

       iii.    Park National Bank shall retain all liens of record securing the Claims.

   c.    *Voting*: Class 1 is Impaired by virtue of the Treatment of Proof of Claim 19 which is a matured obligation. Park National Bank is entitled to vote to  accept or reject the Plan

2.    Class 2 — Ford Motor Credit Company

   a.    *Classification*:  Class 2 consists of all Claims against the Debtor of Ford Motor Credit Company.

   b.    *Treatment*:

       i.    The Claim of Ford Motor Credit Company shall be assumed by the Reorganized Debtor and paid according to terms of the original instrument.
       ii.    Ford Motor Credit Company shall retain all liens of record securing the Claims.

   c.  *Voting*: Class 2 is Unimpaired. Ford Motor Credit Company is  conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Ford Motor Credit Company is not entitled to vote to  accept or reject the Plan.

3.    Class 3 — Gordon Food Service

   a.    *Classification*:  Class 3 consists of all Gordon Food Service Claims against the Debtor. Those claims are as follows:

       i.    $98,125.07 is entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9) for goods that were delivered to the Debtor within the 20 days prior to the commencement of this case (the "GFS 503(b)(9) Claim");
       ii.    $46,393.15 is for goods that qualify as "perishable agricultural commodities" under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a *et seq.* (the "GFS PACA Claim"); and
       iii.    $176,884.92 is a general unsecured claim (the "GFS Unsecured Claim").

   b.    *Treatment*: The Master Distribution Agreement (MDA) shall be assumed by the Debtor and the Claim cured under the following terms and schedule:

       i.    The Debtor shall continue to prepay for all goods to be delivered to the Debtor until confirmation of the Plan.  Upon the Effective Date, GFS will grant to the Reorganized Debtor seven-day credit terms with automatic weekly EFT. GFS reserves and does not waive any of its rights under the MDA, including, but not limited to, the right to shorten or revoke credit terms or terminate service based

11

upon any default by the Reorganized Debtor or any change in the Reorganized Debtor's creditworthiness in GFS' sole discretion. Any change in credit terms imposed by GFS shall not in any way affect the Reorganized Debtor's obligation to pay the remaining cure amounts set forth herein;

ii.     The GFS PACA Claim shall have been paid in full within seven (7) days of the entry of an order authorizing the Debtor to assume the MDA. Such payment shall be an obligation of the Debtor and may be made by FDXII, LLC as part of the Contribution and Backstop Commitment Agreement.

iii.    The GFS Unsecured Claim shall be paid in full as follows:

a. A payment in the amount of $50,000.00 shall be made within five (5) business days of the entry of an order confirming the plan. Simultaneously with that payment, the Reorganized Debtor shall issue to GFS a note to be secured by all of Reorganized Debtor's assets, in the amount of $126,884.92 (the "Secured GFS Note").

b. Within 30 days of the entry of an order confirming the plan, Reorganized Debtor shall commence payments of a minimum of $5,000.00 per month toward repayment of the Secured GFS Note with the terms of such payments to include that any such payments shall be received by GFS not later than the 25th day of each month, with the balance to be paid in full by January 27, 2020. If the balance is paid in full by December 27, 2019, then all accrued interest will be waived by GFS. If the balance is not paid in full by December 27, 2019, then in addition to any balance remaining, there shall also be due all accrued and unpaid interest remains due and owing.

c.      *Voting*: Class 3 is Impaired by virtue of the assumption of the MDA without payment in full of the outstanding obligations as provided under 11 USC 365. If the Debtor did not assume the MDA, additional liability would arise including but not limited to a claim for the Debtor's obligation to repay a prorated portion of a signing bonus pursuant to the MDA. Gordon Food Service is entitled to vote to accept or reject the Plan.

4.      <u>Class 4 — KTM, II (Backstop Commitment Claims)</u>

a.      *Classification*: Class 4 consists of all KTM, II Backstop Commitment Claims against the Debtor.

d.      *Treatment*: The Claims of KTM, II shall be satisfied in full at the option of the Reorganized Debtor (with the consent of the Backstop Commitment Parties) either:

i.      payment in full in Cash;

ii.     delivery of the collateral securing any such Secured Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

iii.    Reinstatement of such Claim in the full amount to bear interest at the rate of Six percent per annum and due in full not later than the anniversary of the Effective Date; or

iv.     such other treatment as may be agreed by KTM, II and the Reorganized Debtor with the consent of the Backstop Commitment Parties.

b.      *Voting*: Class 4 is Impaired. Based on the underlying Claims acquired the Plan treatment modifies the rights and remedies of the Holder of the Claims. KTM, II is entitled to vote is entitled to vote to accept or reject the Plan.

12

5.    Class 5 — M-2 Leasing

    a.     *Classification*:  Class 5 consists of the Secured Claim of  M-2 Leasing against the Debtor.

    b.     *Treatment*:

        i.     The Claim of M-2 Leasing shall be assumed by the Reorganized Debtor and paid according to terms of the original instrument.
        ii.     Ford M-2 Leasing Company shall retain all liens of record securing the Claim.

    b.     *Voting*: Class 5 is Unimpaired. M-2 Leasing  is conclusively deemed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  M-2 Leasing is not entitled to vote to  accept or reject the Plan.

6.    Class 6 — Executory Contracts and Unexpired Leases  to be Assumed by the Debtor

    a.     *Classification*:  Class 6 consists of all Executory Contracts to be assumed by the Debtor.

    b. *Treatment*:     On the Effective Date unless otherwise by prior Bankruptcy Court Order,  the Reorganized Debtor shall assume the executory contracts with The Meyers Y. Cooper Company, IRC Newport, Marshmallow Products and KTM, II for all restaurant locations and shall pay any cure amounts in accordance with the terms between the parties.  Any other Executory Contracts and Unexpired Leases shall assumed  by the Debtor pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtor from time to time in accordance with the Plan, which schedule shall be consistent in all respects with, and shall contain, the terms and  conditions set forth in the  Backstop Commitment Agreement and  shall otherwise be in form and substance  reasonably acceptable to the Debtor and the Backstop Commitment Parties.

    c.     *Voting*:  Class 6 is Unimpaired; in which case the Holders of Claims in Class 6 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, each Holder of an assumed Executory Contract will not be entitled  to vote to accept or reject the Plan.

7.    Class 7 — General Unsecured Claims

    a.     *Classification*:  Class 7 consists of all General Unsecured Claims against the Debtor, including but not limited to Claims arising by virtue of rejection of executory contracts by the Debtor and all Convertible Notes issued by the Debtor.

    b.     *Treatment*: In full and final satisfaction of each Allowed General Unsecured Claim, each Holder thereof shall receive Cash an amount equal to such Allowed General Unsecured  Claim Pro Rata Share of the sum of $75,000.00 on the (1) the Effective Date; or (ii) within fifteen (15) days of the date when such Claims is duly proved and allowed and constitutes a Final Order of the Bankruptcy Court.

    c.     *Voting*:  Class 7 is Impaired.  Holders of Allowed General Unsecured Claims in Class 7 are entitled to vote to  accept or reject the Plan.

8.    Class 8 — Indemnification Claims of Robert Dames

    a.     *Classification*:  Class 8 consists of Claims arising in favor of Robert Dames by virtue of a Settlement Agreement and General Release executed by the Debtor and all the Holders of Existing B  Membership Interests who have also Contributed under the Backstop Commitment Agreement which provided in pertinent part as follows: "….(Robert Dames) is indemnified against  "all personal guarantees or obligations ….signed or incurred relating to any Flipdaddy's location

b.  *Treatment*:  On  the  Effective  Date,  all  Claims  in  this  Class  shall  receive  no  recovery  or distribution  with  the  effect  of  confirmation  being  full  satisfaction  of  all  such  claims  against  the Debtor  and  all  the  Holders  of  Existing  B   Membership  Interests  who  have  also  Contributed under  the  Backstop  Commitment  Agreement  and  any  other  signatories  to  the  Settlement Agreement  and  General.  Any  further  Claims  arising  under  the  Settlement  Agreement  and General  Release  subsequent  to  confirmation  shall  upon  presentment  and  verification  of  the validity  of  such  claim  by  the  Reorganized  Debtor  and  KTM,  II  and  shall  be  made  through  the Contribution  and

Backstop  Commitment  Agreement  by  direct  payment  or  settlement  with  the  actual  holder  of such  claim  with  any  such  settlement  including  the  release  of  Robert  Dames.

c.  *Voting*:  Class  8  is  Impaired.  Such  impairment  arises  by  virtue  of  this  treatment  modifying  the  rights  of Robert  Dames  as  of  the  Effective  Date,  wherein  Robert  Dames  is  deemed  to  have  released  and discharged  the  Debtor,  all  the  Holders  of  Existing  B   Membership  Interests  who  have  also Contributed  under  the  Backstop  Commitment  Agreement  and  any  other  signatories  to  the Settlement  Agreement  and  General  Release.   As  a  result,  Robert  Dames  entitled  to  vote  to accept  or  reject  the  Plan.

9.  <u>Class 9 — Existing Membership Interest</u>

a.  *Classification*:  Class  9  consists  of  all  Existing  Membership  Interests  in  the  Company.

b.  *Treatment*: On  the  Effective  Date,  all  Existing  "A"  Membership  Interests and  all  Existing  "B"  Membership  Interest  in  the  Company  shall  be cancelled  and  shall  be  of  no  further  force  and  effect.  Each  Holder  thereof  shall  be  treated as  follows:

i.  The  Existing  A  Membership  Interest  shall  receive  75%  of  the  New  Membership Interests  of  Reorganized  Debtor,  provided  the  Holder  thereof  votes  for  the  Plan, complies  with  terms  of  the  Contribution  and  Backstop  Commitment  and Agreement  individually  and  as  the  sole  member  of  FDXII,  LLC,  and  also  affirms under  the  New  Organizational  Documents,  Exit  Facility  Documents  and  the  agreed Plan  treatment  and  guarantees  supporting  Class  One  (1),  Class  Three  (3)  and  Class Six  (6).

ii.  The  Existing  B  Membership  Interest  shall  receive  their  Pro  Rata  share  of  25%  of the  New  Membership  Interests  of  Reorganized  Debtor  subject  to  dilution  by  New Membership  Interests  issued  in  connection  with  the  Management  Incentive  Plan, the  Rights  Offering  and  provided  the  Holders  thereof  vote  for  the  Plan  and  comply with  terms  of  the  Contribution  and  Backstop  Commitment  and  Agreement.

c.  *Voting*:  Class  9  is  Impaired.   Holders  of  Existing  Preferred  Interests  in  Class  9  are  entitled to  vote  to  accept  or  reject  the  Plan.

C.  *Special Provision Governing Unimpaired Claims*

Except  as  otherwise  provided  in  the  Plan,  nothing  under  the  Plan  shall  affect  the  Debtor's  or  the  Reorganized Debtor's  rights  regarding  any  Unimpaired  Claim,  including  all  rights  regarding  legal  and  equitable  defenses  to,  or setoffs  or  recoupments  against,  any  such  Unimpaired  Claim.

D.  *Elimination of Vacant Classes*

Any  Class  of  Claims  or  Interests  that  does  not  have  a  Holder  of  an  Allowed  Claim  or  Existing  Interest,  or  a Claim  or  Interest  temporarily  Allowed  by  the  Bankruptcy  Court  as  of  the  date  of  the  Confirmation  Hearing,  shall  be deemed  eliminated  from  the  Plan  for  purposes  of  voting  to  accept  or  reject  the  Plan  and  for  purposes  of  determining acceptance  or  rejection  of  the  Plan  by  such  Class  pursuant  to  section  1129(a)(8)  of  the  Bankruptcy  Code.

E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote on the Plan and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

F.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class(es) of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Backstop Commitment Agreement, the Bankruptcy Code and  the Bankruptcy Rules.

# ARTICLE IV.
## PROVISIONS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims, Interests, and Causes of Action*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, satisfied, or otherwise resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is in the best interests of the Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, reasonable, and in the best interests of the Debtor and the Estate.

B.      *Transactions On or Before the Effective Date*

On  o r  b e f o r e  t h e  Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor shall  carry out the terms of the Plan and take all actions reasonably acceptable to the Backstop Commitment Parties and those Holders of a Class Nine (9) Claim that voted for the Plan as may be necessary or appropriate to effectuate the restructuring transactions, including: (1) the execution and delivery of any appropriate agreements or other documents of consolidation, restructuring, conversion, disposition, transfer, formation, organization, dissolution, or liquidation containing terms that are  consistent with the terms of the Plan and the Contribution and Backstop Commitment Agreement, and that satisfy the requirements of  applicable law and any other terms to which the applicable I n d i v i d u a l s a n d  Entities may agree, including, but not limited to the  documents comprising the Plan Supplement and the New Organizational Documents; (2) the execution and delivery  of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability,  debt, or obligation on terms consistent with the terms of the Plan and the Contribution and Backstop Commitment  Agreement and having  other terms for which the applicable Entities may agree; (3) the execution, delivery and filing, if applicable, of  appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, or  dissolution pursuant to applicable state law, including any applicable New Organizational Documents; (4) such other  transactions that are required to effectuate the restructuring Transactions; and (5) all other actions that the applicable  Entities od Individuals determine to be necessary or appropriate, including making filings or recordings that may be required by  applicable law.

C.      *New GFS Secured Loan*

On the Effective Date, pursuant to the terms provided under Class Three (3), the Reorganized Debtor shall enter into the New Gordon Food Service Secured Loan Note  and any related documents to the extent a party thereto, including, without limitation, any documents required in  connection with the creation or perfection of Liens in connection therewith. The Confirmation Order shall approve the Gordon Food Service New Secured Loan and all

related documents and agreements, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtor in connection therewith, authorization of the Reorganized Debtor to enter into and execute the Gordon Food Service New Secured Loan and all related documents and agreements to the extent a party thereto, and authorization for the Reorganized Debtor to create or perfect the Liens in connection therewith.

Gordon Food Service shall have under the Gordon Food Service New Secured Loan shall have valid, binding, and enforceable Liens on the collateral specified in, and to the extent required by, the Gordon Food Service New Secured Loan and all related documents and agreements. To the extent granted, the guarantees, mortgages, pledges, Liens and other security interests granted pursuant to the Gordon Food Service New Secured Loan and all related

documents and agreements are granted in good faith as an inducement to Gordon Food Service under the Gordon Food Service New Secured Loan to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of any such Liens and security interests shall be as set forth in the Gordon Food Service New Secured Loan and any relevant related documents and agreements.

D.      *Issuance and Distribution of New Membership Interests*

All Existing Interests in The Company shall be cancelled on the Effective Date and the Reorganized Debtor shall l issue the New Membership Interests to Holders of Claims and Interests entitled to receive New Membership Interests pursuant to the Plan, the Rights Offering, and the Backstop Commitment Agreement. The issuance of New Membership Interests shall be duly authorized without the need for any further corporate action and without any further action by the Debtors or Reorganized Debtor or by Holders of any Claims or Interests, as applicable. All New Membership Interests issued under the Plan (including the New Membership Interests underlying any new warrants on behalf of Rights Offering Participants) shall be duly authorized, validly issued, fully paid, and non-assessable.

E.      *Issuance and Distribution of New Warrants*

On the Effective Date, the Reorganized Debtor shall issue such new warrants as may be required for Rights Offering Participants pursuant to the Plan. The issuance of new warrants, including the underlying New Membership Interests, shall be duly authorized without the need for any further corporate action. The holders of any new warrants shall be deemed to be parties to, and bound by, the terms of the Rights Offering (solely in their capacity as members and warrant holders of Reorganized Debtor) without further action or signature. Any new warrant shall be effective as of the Effective Date and, as of such date, shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each holder of new warrants shall be bound thereby.

F.      *Rights Offering*

The Debtors shall distribute the subscription rights authorizing investment in order to acquire a Pro Rata share of the New Membership Interests of a total of 25% of the Reorganized Debtor as set forth in the Plan and the Rights Offering Procedures. Pursuant to the Backstop Commitment Agreement, the Rights Offering Procedures, and the Plan, the Rights Offering shall be open to all Rights Offering Participants.

Upon exercise of the Subscription Rights by the Rights Offering Participants pursuant to the terms of the Backstop Commitment Agreement, the Rights Offering Procedures, and the Plan, the Reorganized Debtor shall be authorized to issue the New Membership Interests in accordance with the Plan, the Backstop Commitment Agreement, and the Rights Offering Procedures.

Pursuant to the Backstop Commitment Agreement, the Backstop Commitment Party, FDXII, LLC shall purchase any Rights Offering Shares not subscribed to by Rights Offering Participants at the per share purchase price set forth in the Backstop Commitment Agreement. On the Effective Date, the rights and obligations of the Debtor under the Backstop Commitment Agreement shall vest in the Reorganized Debtor.

In addition, on the Effective Date and taking into consideration of any additional Rights Offering Participants, there shall be distributed to the New Membership Interests in the capitalization table included in the Contribution and Backstop Commitment Agreement to the Backstop Commitment Parties, but also subject to dilution of the New Membership Interests issued in connection with the Management Incentive Plan and pursuant to the terms of the Rights Offering Procedures to Rights Offering Participants other than Backstop Commitment Participants.

G.    *Exit Documents*

On the Effective Date, the Reorganized Debtor shall enter into such documents required or necessary in connection with the creation or perfection of Liens in connection with the Plan or to implement the Plan. The Confirmation Order shall include to the extent known at the time the approval of such documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganize Debtor in connection therewith, authorization of the Reorganized Debtor to enter into and execute the d o c u m e n t s to the extent a party thereto, and authorization for the Reorganized Debtor to create or perfect the Liens in connection therewith.

Any lender or Holder of a Claim under the Plan shall have valid, binding, and enforceable Liens on the collateral specified in, and to the extent required by the Plan. To the extent granted, the guarantees, mortgages, pledges, Liens and other security interests granted pursuant to the Plans are granted in good faith as an inducement to the lender or Holder of a Claim under the Plan to extend credit thereunder and shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer, shall not otherwise be subject to avoidance, and the priorities of any such Liens and security interests shall be as set forth in the relevant documents.

H.    *Management Incentive Plan*

The entry of the Confirmation Order shall constitute approval of the Management Incentive Plan and the authorization for the Reorganized Debtor to adopt such plan.

I.    *Management of Reorganized Debtor*

The Debtor's current management team shall remain in their current positions after confirmation of the Plan, and shall enter into new employment agreements in connection with the Plan on terms and conditions consistent with the p r e - e x i s t i n g c o n t r a c t o f e m p l o y m e n t and otherwise reasonably acceptable to the Debtor and the Rights Offering Participants.

J.    *Exemption from Registration Requirements*

The offering, issuance, and distribution of any New Membership Interests, pursuant to the Plan, including the Rights Offering Shares and the New Membership Interests issued on account to potential Rights Offering Participants other than Backstop Commitment Participants are anticipated to be exempt from the registration requirements of the laws of the State of Ohio or any similar local law in reliance on section 1145 of the Bankruptcy Code or, only to the extent such exemption under Section 1145 of the Bankruptcy Code is not available, any other available exemption from registration under Ohio law.

K.    *Vesting of Assets*

Except as otherwise provided in the Plan or in any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in the Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and pursue, compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

L.    *Cancelation of Instruments, Certificates, and Other Documents*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all notes, instruments, Certificates, and other documents evidencing Claims or Interests, shall be terminated and canceled and the obligations of the Debtor thereunder or in any way related thereto shall be deemed satisfied in full and discharged.

M.    *Corporate Action*

On and after the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects without any further corporate or equity holder action, including, as

17

applicable: (1) the adoption, execution, and/or filing of the New Organizational Documents; (2) the selection of the directors, managers, and officers for the Reorganized Debtors, including the appointment of the Reorganized Debtor Board; (3) the authorization, issuance, and distribution of the Gordon Food Service Secured Loan, and the New Membership Interests and the execution, delivery, and filing of any documents pertaining thereto, as applicable; (4) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (5) the implementation of the t r a n s a c t i o n s  c o n t e m p l a t e d  b y  t h e  P l a n ; (6) the adoption of a  n e w  Management Incentive Plan by the Reorganized Debtor's Board; and (8) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and any limited liability company or other governance action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further corporate or other action by any members, directors, or officers of the Debtors or Reorganized Debtors, as applicable.

On or before the Effective Date, as applicable, the appropriate directors and officers of the Debtor or the Reorganized Debtor shall be (or shall be deemed to have been) authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated by the Plan (or necessary or desirable to effectuate the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, including and any and all other agreements, documents, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this  Article IV.M shall be effective notwithstanding any requirements under non-bankruptcy law.

N.      *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Debtor shall continue to exist after the Effective Date as a separate limited liability company with all the powers of a limited liability company pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) o r  a u t h o r i z a t i o n  t o  d o  b u s i n e s s in effect before the Effective Date, except to the extent such certificate of incorporation or bylaws (or other analogous formation, constituent or governance documents) is amended by the Plan or otherwise, and to the extent any such document is amended, such document is deemed to be amended pursuant to the Plan and requires no further action or approval (other than any requisite filings required under applicable state or federal law). Notwithstanding the foregoing, the Debtor reserves the right to modify the Debtor's corporate structure as of the Effective Date, including by merger of the Reorganized Debtor or otherwise.

O.      *New Organizational Documents*

On the Effective Date, or as soon thereafter as is reasonably practicable, the Reorganized Debtor's certificates of incorporation and bylaws (and other formation and constituent documents relating to limited liability companies) shall be amended or amended and restated, as applicable, as may be required to be consistent with the provisions of the Plan, the C o n t r i b u t i o n  a n d  B a c k s t o p  C o m m i t m e n t  A g r e e m e n t , the New Organizational Documents, as applicable, and the Bankruptcy Code. To the extent required under the Plan or applicable nonbankruptcy law, the Reorganize Debtors will file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation as well as those States in which the Reorganized debtor conducts business. The New Organizational Documents shall, among other things: (1) authorize the issuance of the New Membership Interests, if so required. After the Effective Date, the Reorganized Debtor may amend and restate its certificate of incorporation and other formation and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of the New Organizational Documents.

P.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtor and the officers and members of the boards of directors and managers (or other relevant governing body) thereof, including the Reorganized Debtor Board, shall be authorized to and may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, and the New Membership Interests issued pursuant to the Plan in the name of  and on behalf of the Reorganized Debtor, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

Q.    *Section 1146(a) Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity interest, or other  interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional  indebtedness by such or other means, including but not limited to the treatment of the claim of Park National Bank under Class One (1) of the Plan; (3) the making, assignment, or recording of any lease or sublease; (4) the grant  of collateral as security for the Gordon Food Service Secured Loan, as applicable; or (5) the making, delivery, or recording  of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any  deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising  out of, contemplated by, or in any way related to the Plan shall not be  subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate  transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording  fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state  or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and  accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such  tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority  over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of  section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and  shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of  any such tax or governmental assessment.

R.    *Directors and Officers*

As of the Effective Date, the term of the current members of the boards of directors of the Debtor shall expire, and the initial boards of directors, including the Reorganized Debtor's Board, as well as the officers of each of the Reorganized Debtor, shall be appointed in accordance with the New Organizational Documents and other  constituent documents of the Reorganized Debtor.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor will, to the extent reasonably practicable, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the Reorganized Debtor's Board, as well as those Persons that will serve as officers of the Reorganized Debtor. To the  extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be  paid to such director or officer will also be disclosed. Provisions regarding the removal, appointment, and replacement  of members of the Reorganized Debtor's Board will be disclosed in the New Organizational Documents.

S.    *Employee Arrangements of the Reorganized Debtor*

On the Effective Date, the Debtor shall have (1) assumed each of the written contracts, agreements, policies, programs and plans for compensation, bonuses, reimbursement, health care benefits, disability benefits, deferred compensation benefits, travel benefits, vacation and sick leave benefits, savings, severance benefits, retirement benefits, welfare benefits, relocation programs, life insurance and accidental death and dismemberment insurance, including written contracts, agreements, policies, programs and plans for bonuses and other incentives or compensation for the Debtor's current and former employees, directors, officers, and managers, including executive compensation programs and existing compensation arrangements for the employees of the Debtors (but excluding any severance agreements with any of Debtor's former employees) that are not set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases; or (2) entered into a new employee agreement on terms acceptable to the respective employee and the Reorganized Debtor; *provided,* that it is agreed and understood that any employment agreements or arrangements that  constitute a component of at will employment arrangements, are provided or determined in the Debtor's discretion, or  are subject to modification or termination by the Debtor in accordance with applicable law will remain as such with  respect to the Reorganized Debtor. Except to the extent provided by Article VIII of the Plan, nothing in the Plan  shall limit, diminish, or otherwise alter the Debtor's or the Reorganized Debtor's defenses, claims, Causes of Action,  or other rights with respect to any such employment agreements. Notwithstanding the foregoing, it is agreed an  understood that (i) the consummation of the Plan shall not trigger any change in  control provision (or other similar provision) under any contract, agreement, policy, program, or plan.

Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

T.      *Preservation of Causes of Action*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article VIII of the Plan or a Final Order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.T include any claim or Cause of Action with respect to, or against, a Released Party that is released under Article VIII of the Plan.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to the first paragraph of this Article IV.T that a Debtor may hold against any Entity shall vest in the Reorganized Debtor. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption or Rejection of Executory Contracts and Unexpired Leases*

Each Executory Contract and Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, unless listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, if any. The assumption of Executory Contracts and Unexpired Leases hereunder may include the assignment of certain of such contracts to Affiliates. The Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described assumptions and assignments.

Except as otherwise provided herein or agreed to by the Debtor and the applicable counterparty, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements related thereto, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any Claims that may arise in connection therewith. To the extent applicable, no change of control (or similar provision) will be deemed to occur under any such Executory Contract or Unexpired Lease.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, if any, shall be served with a notice of rejection of Executory Contracts and Unexpired Leases with the Plan Supplement. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts and Unexpired Leases, if any, must be Filed with the Bankruptcy Court within 30 days after the

date of the order of the Bankruptcy Court approving such rejection. Any Claims arising from the rejection of an Executory Contract or Unexpired Lease that are not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtor, the Reorganized Debtor, the Estate, or property of the foregoing parties, without the need for any objection by the Debtor or Reorganized Debtor, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary. Claims arising from the rejection of the Debtor's Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

The Debtor or the Reorganized Debtor, as applicable, shall pay Cures, if any, on the Effective Date or as soon as reasonably practicable thereafter. Unless otherwise agreed upon in writing by the parties to the applicable Executory Contract or Unexpired Lease, all requests for payment of Cure that differ from the amounts paid or proposed to be paid by the Debtor or the Reorganized Debtor to a counterparty must be filed with Counsel for the Debtor on or before 15 days after the Effective Date. Any such request that is not timely filed shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtor or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court. Any Cure shall be deemed fully satisfied, released, and discharged upon payment by the Debtor or the Reorganized Debtor of the Cure; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtor from paying any Cure despite the failure of the relevant counterparty to file such request for payment of such Cure. The Reorganized Debtor also may settle any Cure without any further notice to or action, order, or approval of the Bankruptcy Court. In addition, any objection to the assumption of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court on or before the Confirmation Hearing. Any such objection will be scheduled to be heard by the Bankruptcy Court at the Confirmation Hearing or at the Debtor's or Reorganized Debtor's, as applicable, first scheduled hearing for which such objection is timely Filed. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.

If there is any dispute regarding any Cure, the ability of the Reorganized Debtor or any assignee to provide "adequate assurance of future performance" within the meaning of section 365 of the Bankruptcy Code, or any other matter pertaining to assumption, then payment of any Cure shall occur as soon as reasonably practicable after entry of a Final Order resolving such dispute, approving such assumption (and, if applicable, assignment), or as may be agreed upon by the Debtor or the Reorganized Debtor, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. The Debtor and Reorganized Debtor, as applicable, reserve the right at any time to move to reject any Executory Contract or Unexpired Lease based upon the existence of any such unresolved dispute.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise and full payment of any applicable Cure pursuant to this Article V.C shall result in the full release and satisfaction of any Cures, Claims, or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Case, including pursuant to the Confirmation Order, and for which any Cure has been fully paid pursuant to this Article V.C, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Indemnification*

On and as of the Effective Date, the Indemnification Provisions will be assumed, irrevocable with respect to any claims relating to acts or omissions occurring at or prior to the Effective Date, and will survive the effectiveness of the Plan, and the New Organizational Documents will provide for the indemnification, defense, reimbursement, exculpation, and/or limitation of liability of, and advancement of fees and expenses to the Debtor's and the Reorganized Debtor's directors, officers, employees, or agents that were employed by, or serving on the board of directors (or similar governing body) of the Debtor as of the Petition Date, to the fullest extent permitted by law and at least to the same extent as the organizational documents of the Debtor on the Petition Date, against any Claims or Causes of Action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and, notwithstanding anything in the Plan to the contrary, the Reorganized Debtor will amend and/or restate the New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the

21

Reorganized Debtor's obligations to provide such indemnification rights or such directors', officers', employees', or agents' indemnification rights with respect to any claims relating to acts or omissions occurring at or prior to the Effective Date.

E.     *Insurance Policies*

Notwithstanding anything in the Plan to the contrary, all of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, pursuant to section 365(a) of the Bankruptcy Code, the Debtor shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto, including all D&O Liability Insurance Policies (including tail coverage liability insurance). Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtor's assumption of all such insurance policies, including the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of insurance policies, including the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtor under the Plan as to which no Proof of Claim or Cure Claim need be Filed, and shall survive the Effective Date.

On or before the Effective Date, the Debtor shall purchase and maintain tail coverage under the D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than under, and with an aggregate limit of liability no less than the aggregate limit of liability under, the existing D&O Liability Insurance Policies.

F.     *Contracts and Leases After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed under section 365 of the Bankruptcy Code, will be performed by the Reorganized Debtor  in the ordinary course of its business. Such contracts and leases that are not  rejected under the Plan shall survive and remain unaffected by entry of the Confirmation Order.

G.     *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtor or any other party that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtor or the Reorganized Debtor, as applicable, shall have 45 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

H.     *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.     *Distributions on Account of Claims and Interests Allowed as of the Effective Date*

Except as otherwise provided herein, a Final Order, or as otherwise agreed to by the Debtor or the Reorganized Debtor, as the case may be, and the Holder of the applicable Claim or Interest, on the first Distribution Date, the Distribution Agent shall make initial distributions under the Plan on account of Claims and Interests Allowed on or before the Effective Date; *provided*, *however*, that (1) Allowed Administrative Claims with respect to liabilities incurred by the Debtors in the ordinary course of business shall be paid or performed in the ordinary course of business in accordance with the terms and conditions of any controlling agreements, course of dealing, course of business, or industry practice, and (2) Allowed Priority Tax Claims shall be paid in accordance with Article III.B.2 and Article III.B.1, respectively.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and the Holder of such Claim or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

A Distribution Date shall occur no more frequently than once in every 90-day period after the Effective Date, as necessary, in the Reorganized Debtor's sole discretion.

B.      *Rights and Powers of the Distribution Agent*

   1.      Powers of Distribution Agent

   The Distribution Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

   2.      Expenses Incurred On or After the Effective Date

   Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtor.

C.      *Special Rules for Distributions to Holders of Disputed Claims*

   Except as otherwise agreed by the relevant parties:  (1) no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; and (2) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order for the Claims have been Allowed or expunged. Any dividends or other distributions arising from property distributed to Holders of Allowed Claims in a Class and paid to such Holders under the Plan shall also be paid, in the applicable amounts, to any Holder of a Disputed Claim in such Class that becomes an Allowed Claim after the date or dates that such dividends or other distributions were earlier paid to Holders of Allowed Claims in such Class.

   Any fund established to hold consideration to be received under the Plan pending resolution of Disputed Claims shall be treated as a "disputed ownership fund" pursuant to Treasury Regulation section 1.468B-9. Any such fund shall, therefore, be subject to entity-level taxation. For the avoidance of doubt, any New Membership Interests shall  not be issued to such fund; rather, the Reorganized Debtor shall retain sufficient authorized, but unissued, New Membership Interests and issue them directly to Holders of Claims following the resolution of Disputed Claims.

D.      *Delivery of Distributions*

   1.      Record Date for Distributions

   Three business days before the Effective Date, the Claim Register maintained by the Bankruptcy Court for each Class of Claims as also maintained by the Debtor shall be deemed closed, and there shall be no further changes in the record Holders of any Claims. The Distribution Agent  shall have no obligation to recognize any transfer of Claims or Interests occurring on or after 3 business days before  the Effective Date. In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts,  neither the Debtors nor the Distribution Agent shall have any obligation to recognize or deal with any party other than  the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such  non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

   2.      Distribution Process

   The Distribution Agent shall make all distributions required under the Plan, except that with respect to distributions to Holders of Allowed Claims governed by a separate agreement, shall exercise commercially reasonable efforts to implement appropriate mechanics governing such distributions in accordance with the Plan and the terms of

the relevant governing agreement. Except as otherwise provided herein, and notwithstanding any authority to the contrary, distributions to Holders of Allowed Claims and Existing Interests, including Claims and Interests that become Allowed after the Effective Date, shall be made to Holders of record or their respective designees as of 3 business days before the Effective Date: (a) to the address of such Holder or designee as set forth in the applicable register (or if the appropriate notice has been provided pursuant to the governing agreement in writing, on or before the date that is 10 calendar days before the Effective Date, of a change of address or an identification of designee, to the changed address or to such designee, as applicable); or (b) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004, if no address exists in the applicable register, no Proof of Claim has been Filed, and the Distribution Agent has not received a written notice of a change of address on or before the date that is 10 calendar days before the Effective Date. The Debtor, the Reorganized Debtor, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan. Except as otherwise provided in the Plan, Holders of Claims and Holders of Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

3.     Compliance Matters

In connection with the Plan, to the extent applicable, the Reorganized Debtor and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, or withholding distributions pending receipt of information necessary to facilitate such distributions. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

4.     Fractional, Undeliverable, and Unclaimed Distributions

a.     *Fractional Distributions*.  Whenever any distribution of a dividend upon a Claim or New Membership Interests would otherwise be required pursuant to the Plan and results in a fractional share, the actual distribution shall reflect a rounding of such fraction to the nearest interest or share or dollar, as applicable, with half interests of shares, or any amount equal to $0.50, or less being rounded down. The total number of authorized shares of New Membership Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

b.     *Undeliverable Distributions*. If any distribution to a Holder of an Allowed Claim is returned to the Distribution Agent as undeliverable, no further distributions shall be made to such Holder unless and until the Distribution Agent is notified in writing of such Holder's then-current address or other necessary information for delivery, at which time all currently due missed distributions shall be made to such Holder on the next Distribution Date. Undeliverable distributions shall remain in the possession of the Reorganized Debtor until such time as a distribution becomes deliverable, or such distribution reverts to the Reorganized Debtor or is canceled pursuant to Article VI.D.5.c of the Plan, and shall not be supplemented with any interest, dividends, or other accruals of any kind.

c.     *Reversion*. Any distribution under the Plan that is an Unclaimed Distribution for a period of 6 months after distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and such Unclaimed Distribution shall revest in the Reorganized Debtor and, to the extent such Unclaimed Distribution is comprised of New Membership Interests or a new warrants, each shall be deemed canceled. Upon such revesting, the Claim of the Holder or its successors with respect to such property shall be canceled, discharged, and forever barred notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws, or any provisions in any document governing the distribution that is an Unclaimed Distribution, to the contrary.

6.      Surrender of Canceled Membership Instruments or Convertible Notes

On the Effective Date, each Holder of a Membership Instruments or Convertible Notes shall be deemed to have surrendered such Instrument or Note to the Reorganized Debtor. Such Instrument shall be canceled solely with respect to the Debtor and the Reorganized Debtor. Notwithstanding the foregoing paragraph, this Article VI.D.6 shall not apply to any Claims and Interests Reinstated  pursuant to the terms of the Plan.

E.      *Claims Paid or Payable by Third Parties*

1.      Claims Payable by Insurance Carriers

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided* that the Debtors shall provide 21 calendar days' notice to the Holder of such Claim prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.

2.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Notwithstanding anything to the contrary contained herein (including Article VIII), nothing contained in the Plan shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtors or any other Entity may hold against any other Entity, including insurers, under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

F.      *Setoffs*

Except as otherwise expressly provided for herein, the Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that the Debtor or Reorganized Debtor, may hold against  the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not  been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights, and Causes of Action that t h e  Reorganized Debtor may possess against such Holder. In no event shall any Holder of Claims be entitled to set off any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such setoff on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

G.      *Allocation Between Principal and Accrued Interest*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Allowed Claims, to any portion of such Claims for accrued but unpaid interest.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

A.    *Allowance of Claims*

After the Effective Date, the Reorganized Debtor shall have and retain any and all rights and defenses  the Debtor had with respect to any Claim immediately before the Effective Date. Except as expressly  provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the  Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under  the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order  (when it becomes a Final Order), in the Chapter 11 Case.

B.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtor shall have the sole authority to File and prosecute objections to Claims, and the Reorganized Debtor  shall have the sole authority to (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections  to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve  any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3)  administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. On and after the Effective Date, the Reorganized Debtor  will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

C.    *Estimation of Claims*

Before, on, or after the Effective Date, the Debtor or the Reorganized Debtor, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation, pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor or Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.    *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtor or the Reorganized Debtor without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Hearing Date on Confirmation of the Plan.

F.    *Disallowance of Claims*

Any Claims held by Entities or Individuals from which property is recoverable under sections 542, 543, 550, or 553 of the  Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549,  or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of

the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity or Individuals have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Debtor or the Reorganized Debtor. All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as otherwise provided herein or as agreed to by the Reorganized Debtor, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.     *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

H.     *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtor.

I.     *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

**ARTICLE VIII.
EFFECT OF CONFIRMATION OF THE PLAN**

A.     **Discharge of Claims and Termination of Interests**

**Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtor before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtor with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date. The**

Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

B.      *Releases by the Debtor*

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtor, and its Estate from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtor, that the Debtor, the Reorganized Debtor, or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part:

1.      the Debtor, the Debtor's restructuring efforts, or the formulation, preparation, dissemination, negotiation, of the Contribution and Backstop Commitment Agreement, the Plan, the Disclosure Statement or the Rights Offering Procedures;

2.      any transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Contribution and Backstop Commitment Agreement, the Disclosure Statement, or the Plan, including the Rights Offering;

3.      the Chapter 11 Case, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement; or

4.      any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a final order to have constituted actual fraud, (ii) the rights of any party under any employment agreement or plan, or (iii) any post-Effective Date obligations of any party or Entity under the Plan, any transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

C.      *Releases by Holders of Claims and Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor, the Reorganized Debtor, and a Released Party from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

1.      the Debtor, the Debtor's restructuring efforts, or the formulation, preparation, dissemination, negotiation, or the Contribution and Backstop Commitment Agreement the Plan, the Disclosure Statement or the Rights Offering Procedures;

2.      any transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Contribution and Backstop Commitment Agreement, the Disclosure Statement, or the Plan, including the Rights Offering;

3.      the Chapter 11 Case, the Disclosure Statement, the Plan, the Filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan,

28

including the issuance or distribution of N e w  M e m b e r s h i p  I n t e r e s t s pursuant to the Plan or the Rights Offering, or the distribution of property under the Plan or any other related agreement; or

4.        any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims related to any act or omission that is determined in a final order to have constituted actual fraud or (ii) any post-Effective Date obligations of any party or Entity under the Plan, any restructuring transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

D.        *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or termination of the Contribution and Backstop Commitment Agreement and  related post-petition transactions, the Disclosure Statement, the Plan, the Rights Offering, the Rights Offering  Procedures, or any transaction, contract, instrument, release or other agreement or document  created or entered into in connection with the Disclosure Statement or the Plan, the Filing of the Chapter 11  Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of  the Plan, including the issuance of the New Membership Interests pursuant to the Plan or the Rights Offering, or the distribution of  property under the Plan or any other related agreement, except for claims related to any act or omission that  is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in  all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their  duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan  shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to  the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on  account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or  regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made  pursuant to the Plan.

E.        *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan, shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, the Reorganized Debtor, the Backstop Commitment Parties or a n y  o t h e r  Released Parties or the Exculpated Parties: (i) commencing or continuing in any manner any action or other proceeding  of any kind on account of or in connection with or with respect to any such claims or interests; (ii) enforcing,  attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against  such Entities on account of or in connection with or with respect to any such claims or interests; (iii) creating,  perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates  of such Entities on account of or in connection with or with respect to any such claims or interests; (iv) asserting  any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or  against the property of such Entities on account of or in connection with or with respect to any such claims or  interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.

F.        *Protection Against Discriminatory Treatment*

In accordance with section 525 of the Bankruptcy Code, and consistent with Article VI of the United States Constitution, no Governmental Unit shall discriminate against the Reorganized Debtor, or any Entity with which

29

the  Reorganized Debtor has been or is associated, solely because such Reorganized Debtor was a Debtor under chapter 11,  may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but  before the Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11  Case.

G.    *Release of Liens*

Except as otherwise specifically provided in the Plan, the Gordon Food Service Secured Note, the exit documents to effectuate the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the  Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the  case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective  Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall  be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust,  Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns, in  each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being  required to be made by the Debtor, or any other Holder of a Secured Claim. In addition, at the sole expense of the  Debtor or the Reorganized Debtor, the Holders of Secured Claims shall execute and deliver all documents reasonably  requested by the Debtor or Reorganized Debtor to  evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize  the Reorganized Debtor and their designees to file UCC-3 termination statements and other release documentation  (to the extent applicable) with respect thereto.

H.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever Disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (1) such Claim has been adjudicated as non-contingent, or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

I.    *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup such Claim against any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.    *Subordination Rights*

Any distributions under the Plan to Holders of Allowed Claims or Existing Interests shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. On the Effective Date, any such subordination rights shall be deemed waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan; *provided*, that any such subordination rights shall be preserved in the event the Confirmation Order is vacated, the Effective Date does not occur in accordance with the terms hereunder or the Plan is revoked or withdrawn.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article IX.B of the Plan:

1.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance consistent in all respects with the Contribution and Backstop Commitment Agreement and otherwise be in form and substance reasonably acceptable to the Debtor and the Backstop Commitment Parties, and the Confirmation Order shall be a Final Order; provided, that notwithstanding anything to the contrary herein, the determination to not consummate the Plan after the expiration of the applicable period to file an appeal solely on the basis that the Confirmation Order has not become a Final Order after the applicable appeals period has elapsed due to a pending appeal shall require the unanimous written consent of all the Backstop Commitment Parties; and *provided, further,* that in the event that the Effective Date of the Plan does not occur solely as a result of the Confirmation Order not being a Final Order after the applicable period has elapsed due to a pending appeal, the Backstop Commitment Parties shall not be entitled to receive the return of any Contribution in accordance with Contribution and Backstop Commitment Agreement until and unless the appeal affecting Confirmation Order not being a Final Order is resolved.

2.    The Plan, the Definitive Documents, and all documents contained in any Plan supplement, including any exhibits, schedules, amendments, modifications or supplements thereto, shall have been executed and/or filed, in form and substance consistent in all respects with the Contribution and Backstop Commitment Agreement and otherwise reasonably acceptable to the Debtor and the Backstop Commitment Parties and shall not have been modified in a manner inconsistent with Contribution and Backstop Commitment Agreement.;

3.    The Contribution and Backstop Commitment Agreement shall remain in full force and effect, all conditions shall have been satisfied thereunder, and there shall be no breach that would give rise to a right to terminate the Contribution and Backstop Commitment Agreement for which notice has been given in accordance with the terms thereof (including by the requisite parties thereunder).

4.    No court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting, in a material respect, the consummation of the Plan, or any of the Definitive Documents contemplated thereby;

5.    The Debtors shall have obtained all material authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the transactions contemplated by the Plan.

6.    All Allowed Professional Fee Claims shall have been paid in full or agreement reached for payment of such Allowed Professional Fee Claims after the Effective Date pending approval of the Professional Fee Claims by the Bankruptcy Court;

B.    *Waiver of Conditions*

The conditions to the Effective Date of the Plan set forth in Article IX of the Plan may only be waived with the consent of the Debtors and the Backstop Commitment Parties (such consents not to be unreasonably withheld) without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.    *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur on or before the termination the Backstop Commitment Agreement, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity; (2) prejudice in any manner the rights of any Debtor or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by any Debtor or any other Entity; *provided,* that all provisions of the Contribution and Backstop Commitment Agreement that survive termination thereof shall remain in effect in accordance with the terms thereof.

D.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

# ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification of Plan*

Effective as of the date hereof and subject to the terms of the Contribution and Backstop Commitment Agreement: (1) the Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan before the entry of the Confirmation Order consistent with the terms set forth herein; and (2) after the entry of the Confirmation Order, the Debtor or the Reorganized Debtor, may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission, or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan consistent with the terms set forth herein.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation of votes thereon pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date and to File subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan, or if Confirmation or the Effective Date does not occur, then: (1) the Plan will be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (3) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims, Interests, or Causes of Action by any Entity, (b) prejudice in any manner the rights of the Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim against the Debtor, including the resolution of any request for payment of any Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance
of Claims; *provided*, that the Bankruptcy Court's jurisdiction with respect to the foregoing shall be on a non-exclusive basis;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including: (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which the Debtor is party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure or Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Existing Interests are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by a Final Order in the Chapter 11 Case, and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

10.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Case, including: (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.E.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and contracts, instruments, releases, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

11.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

12.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

13.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

14.      enter an order or Final Decree concluding or closing the Chapter 11 Case;

15.      enforce all orders previously entered by the Bankruptcy Court;

16.      hear and determine disputes involving all matters the implementation of the Plan, *provided*, *however*, that upon the closing  of the relevant facilities and execution of the New Organizational Documents, disputes with respect to the New Organizational Documents that are not related to the Plan shall otherwise be governed  by the jurisdictional, forum selection or dispute resolution clause contained in such document; and

17.      hear any other matter not inconsistent with the Bankruptcy Code.

Notwithstanding the foregoing, the Bankruptcy Court retains jurisdiction, but not exclusive jurisdiction, to determine whether environmental liabilities asserted by any Governmental Unit are discharged or otherwise barred by the Confirmation Order or the Plan, or the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A hereof, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Holders of Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

B.    *Additional Documents*

On or before the Effective Date, and subject to the terms of the Backstop Commitment Agreement, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Payment of Statutory Fees*

All fees payable pursuant to 28 U.S.C. § 1930(a) prior to the Effective Date shall be paid by the Debtor. On and after the Effective Date, the Reorganized Debtor shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. The Debtor and Reorganized Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

D.    *Reservation of Rights*

The Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.    *Service of Documents*

After the Effective Date, any pleading, notice, or other document required by the Plan to be served on or delivered to the Reorganized Debtors shall be served on:

**Debtor and Reorganized Debtor**

DILLER & RICE, LLC
Steven L. Diller (0023320)
124 E. Main Street
Van Wert, Ohio  45891

G.      *Term of Injunctions or Stays*

**Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.**

H.      *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Plan Supplement*

After any of such documents included in the Plan Supplement are Filed, copies of such documents shall be made available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at https://www.pacer.gov/.

J.      *Non-Severability*

If, prior to Confirmation, the Bankruptcy Court holds any term or provision of the Plan to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtor or the Backstop Commitment Parties; and (3) non-severable and mutually dependent.

K.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its respective agents, representatives, members, principals, equity holders (regardless of whether such interests are held directly or indirectly), officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of New Membership Interests offered and sold under the Plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the New Membership Interests offered and sold under the Plan.

L.      *Closing of Chapter 11 Case*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

35

M.       *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Contribution and Backstop Commitment Agreement, or  papers Filed with the Bankruptcy Court prior to the Confirmation Date.

Dated: May 22, 2019                               FLIPDADDY'S, LLC

By_____
        Thomas Sacco
Chief Executive Officer