**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ----------------------------------------------------------x | | Chapter 11 |
| In re: | : | |
| | : | Case No. 1:18-bk-14408 |
| FLIPDADDY'S, LLC, | : | |
| | : | Chief Judge Jeffery P. Hopkins |
| Debtor. | : | |
| -------------------------------------------------------- x | | |

## OBJECTION OF IRC NEWPORT PAVILION, L.L.C. TO THE CHAPTER 11 PLAN OF REORGANIZATION OF FLIPDADDY'S, LLC [REL. DOC. 110]

IRC Newport Pavilion, L.L.C. ("Landlord"), by and through its undersigned counsel, hereby objects to *The Chapter 11 Plan of Reorganization of Flipdaddy's, LLC* [Doc. 110] (the "Plan") filed on behalf of debtor and debtor-in-possession Flipdaddy's, LLC ("Debtor"), respectfully requesting that the Court deny confirmation of the Plan. A Memorandum in Support of this objection is attached hereto pursuant to Local Bankruptcy Rule 9013-1(b) and incorporated by reference herein.

Dated: July 19, 2019

Respectfully submitted by:

/s/  Rocco I. Debitetto
Rocco I. Debitetto (0073878)
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone:   (216) 621-0150
Facsimile:    (216) 241-2824
E-mail:  ridebitetto@hahnlaw.com

*Counsel for Movant, IRC Newport Pavilion, L.L.C.*

11106332.2

## **MEMORANDUM IN SUPPORT**

## BACKGROUND

*The Lease*

1. On July 29, 2014, NP Acquisition II, LLC ("Old Landlord")[1] and Flipdaddy's, LLC ("Debtor") entered into a Sublease Agreement (the "Sublease") pursuant to which Debtor agreed to lease non-residential real property commonly known as 165 Pavilion Parkway, Newport, KY 41071 (the "Premises").

2. Old Landlord and Inland Newport Pavilion, L.L.C. n/k/a IRC Newport Pavilion L.L.C. ("Landlord") entered into an Assignment and Assumption of Sublease dated October 15, 2014 (the "Lease Assignment"), pursuant to which Old Landlord assigned, and Landlord assumed, the Sublease.

3. On February 2, 2015, Landlord and Debtor entered into a Stipulation of Term of Sublease, (the "Lease Stipulation" and, together with the Sublease, Lease Assignment, and all related documentation of the lease of the premises, collectively, the "Lease"), pursuant to which, among other things, Landlord and Debtor established a ten-year term for the Lease, with the Lease expiring on April 15, 2025.

4. Pursuant to the Lease, Debtor is obligated, among other things, to pay $22,413.30 on or before the first of each month, consisting of $17,500.00 in base rent $934.56 in common area maintenance (CAM); and $3,978.74 in real estate taxes (RET).[2]

5. Debtor's last payment to Landlord before the Petition Date (defined below) was on November 7, 2018.

---

[1] Unless otherwise defined or stated in this objection, all capitalized terms used in this objection shall have the meanings ascribed to them in the Plan.

[2] Obligations can vary due, for example, to real estate tax reconciliations and corresponding "true ups."

2

*The Bankruptcy*

6. On December 6, 2018 (the "Petition Date"), Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").[3] Debtor remains in possession of its assets and operations as a debtor-in-possession. The United States Trustee has not appointed an Official Committee of Unsecured Creditors.

7. Since the Petition Date, Debtor remains in possession, use, and enjoyment of the Premises on a day-to-day basis in its operations. Notwithstanding Debtor's continued possession, use, and enjoyment of the Premises, Debtor has failed to make complete and timely post-petition rent payments to Landlord, as required pursuant to Section 365(d)(3). In fact, all of Debtor's post-petition rent payments have been late, most were made only after persistent requests by Landlord or made in order to resolve contested matters (*e.g.*, an objection by Landlord to Debtor's motion to extend the deadline to assume or reject the Lease), and the payment for March 2018 was returned due to non-sufficient funds.[4]

8. On May 10, 2019, the Court entered an *Order Approving Agreement of the Debtor and IRC Newport Pavilion, LLC and the Myers Y. Cooper Company Resolving the Objections (Doc. No. 93 and Doc. No. 95, Respectively) to the Debtor's Motion to Extend the Time for the Acceptance and/or Rejection of Executory Contracts and Certain Leases (Doc. 84)* [Doc. 102] (the "Agreed Order").

9. Pursuant to the Agreed Order, among other things, Debtor was instructed to file a motion to assume the Lease and pay any corresponding cure claim on or before June 30, 2019.

---

[3] Unless otherwise defined or stated herein, all "Section" references herein are to the Bankruptcy Code; all "Rule" references herein are to the Federal Rules of Bankruptcy Procedure; and all "Local Rule" or "LBR" references are to the Local Rules of the United States Bankruptcy Court for the Southern District of Ohio.

[4] Debtor subsequently paid the March 2019 payment and corresponding late fee.

3

11106332.2

(Ag. Or., ¶ 5.) On June 7, 2019, Debtor filed the *Motion to Assume Lease or Executory Contract with IRC Newport Pavilion LLC and Establish the Cure Amount and Procedures Related Thereto* [Doc. 115] (the "Assumption Motion"), to which Landlord objected by way of the *Objection of IRC Newport Pavilion, L.L.C. to Motion to Assume Lease or Executory Contract with IRC Newport Pavilion LLC and Establish the Cure Amount and Procedures Related Thereto* [Doc. 142] (the "Assumption Objection"). The Assumption Motion and Assumption Objection are scheduled to be heard contemporaneously with a hearing on confirmation of the Plan.

*Issues Regarding Assumption of Lease*

10. In advance of filing this objection, Landlord and Debtor engaged in good-faith negotiations, resulting Debtor proposing a cure claim pursuant to Section 365(b)(1)(A) in the amount of $93,097.54 (the "Cure Claim"), to which Landlord agreed provided it was paid on or before June 30, 2019, pursuant to the Agreed Order, and without prejudice to further amounts owed if the Lease were assumed subsequent to June 30, 2019. Debtor has not, however, provided adequate assurance of future performance under the Lease, as required by Section 365(b)(1)(C). Given Debtor's post-petition track record of non-performance under the Lease, which upon in formation and belief corresponds to Debtor's most profitable location, Debtor's ability to perform under the Plan is doubtful at best.

**LAW AND ARGUMENT**

*The Plan is Not Feasible*

11. Pursuant to Section 1129(a), the Court shall confirm the Plan only if, among other things, "[c]onfirmation of the [P]lan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan,

4

unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11). "Although the Bankruptcy Code does not use the terms "feasible' or 'feasibility,' the requirement imposed by § 1129(a)(11) is commonly known as the 'feasibility' test for confirmation." *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 478 (Bankr. S.D. Ohio 2011) (internal citations and quotations omitted). "The purpose of the feasibility test is to determine whether there is a reasonable probability that creditors will receive the payments provided for in the plan." *Id*. The Plan is not feasible for several reasons and, therefore, should not be confirmed.

12. Debtor's cash flow projection attached, as <u>Exhibit E</u> to the *Disclosure Statement for Chapter 11 Plan of Reorganization* [Doc. 109] (the "<u>Disclosure Statement</u>") (the "<u>Cash Flow Projection</u>"), is current through only February 2019, lacks an actual-verses-projected analysis for months past, and only projects through December 2019 – a mere four months post-confirmation, if Debtor confirms its Plan on or before the assumed confirmation date of July 31, 2019. (Discl. St., <u>Ex. E</u>, Art. II(F).) Debtor's June 2019 *Operating Report* [Doc. 152] (the "<u>June Operating Report</u>"), however, casts severe doubt on the Cash Flow Projection. For example, the Cash Flow Projection projects net income in the amount of $19,127 during June 2019, yet the June Operating Report shows ($53,562.52) in actual *negative* net income during June 2019, with year-to-date *negative* post-petition net income as of June 30, 2019, in the amount of ($664,214.18). In fact, Debtor has not posted a single month of positive net income since the Petition Date. (January 2019 *Operating Report* [Doc. 68] ($122,344.57 in negative net income); February 2019 *Operating Report* [Doc. 80] ($78,185.70 in negative net income); March 2019 *Operating Report* [Doc. 94] ($51,407.42 in negative net income); April 2019 *Operating Report* [Doc. 108] ($121,747.04 in negative net income); and May 2019 *Operating Report* [Doc. 126] ($119,810.28

5

11106332.2

in negative net income).)[5]

13.     Though the Plan provides for Debtor to receive a cash infusion in the amount of $655,000 pursuant to the Contribution and Backstop Commitment Agreement (the "Commitment Agreement")[6] (Discl. Stmnt, Art. VII(B)), the benefits of this Commitment Agreement are somewhat illusory.  As an initial matter, the Commitment Agreement is not even executed by all of the Commitment Parties (as defined in the Commitment Agreement).  Similarly, although Thomas Kearney and KTM, II, LLC, are being asked to provide a Backstop Commitment (as defined in the Commitment Agreement), Mr. Kearney's Backstop Commitment is optional at best.  (Commitment Ag., § 2.2, providing "If Kearney *elects not to make* such Backstop Commitment . . . ." (emphasis added).)

14.     Even assuming, however, that the Commitment Agreement and all obligations of the Commitment Parties thereunder are valid and fully enforceable, and assuming still further that each Commitment Party possesses the financial wherewithal to honor his, her, or its obligations under the Commitment Agreement, a cash infusion in the amount of $655,000 is woefully insufficient to sustain operations. Based on the June 2019 Operating Report, Debtor is losing, on average, $110,702.36 per month since January 1, 2019.  At that rate, the $655,000 cash infusion, if received, will keep Debtor afloat for a mere 5.9 months after confirmation— essentially through January 2020, if the Plan is confirmed and takes effect in July 2019.

15.     At bottom, even operating under the protection of the Bankruptcy Code, the Debtor is taking on serious water.  The Court should not force creditors aboard this ship by confirming the Plan.  Debtor is headed squarely for a further financial reorganization and, as

---

[5] The December 2018 *Operating Report* [Doc. 40] is for a partial post-petition month and does not set forth net income.
[6] The Commitment Agreement, attached to the Disclosure Statement as Exhibit B is not fully executed and, itself, only provides for $250,000 in contributions. (Commitment Ag., § 2.2.)

such, the Plan fails to satisfy Section 1129(a)(11) and should not be confirmed.

*Other Objections*

No Plan Supplement

16. The Plan Supplement, which was to be filed on or before July 16, 2019, has not been filed as of the filing of this objection. (Plan, Art. I(A)(68).) The Plan Supplement is to contain: "(a) the material New Organizational Documents; (b) a list of retained Causes of Action; (c) a disclosure of the members of the Reorganized Company Board; (d) the Schedule of Assumed Executory Contracts and Unexpired Leases; (e) the Schedule of Rejected Executory Contracts and Unexpired Leases; (f) the form of the Management Incentive Plan; and (g) any other document material to the Exit Facility Documents." (Plan, Art. I(A)(68).) The Plan Supplement contains material documents and information directly affecting the Plan and all creditors, all of which should be of-record. For example, *nothing is known about the Management Incentive Plan,* including whether such incentives are reasonable and the extent to which they will further burden Debtor's already cash-flow-negative operations.

17. Similarly, because the Plan Supplement has not been filed, nothing is known about the contemplated officers and directors of the reorganized Debtor, their respective affiliations, and their respective compensation to the extent they are insiders. No corresponding determination can be made as to whether their appointment "is consistent with the interests of creditors and equity security holders and with public policy[.]" 11 U.S.C. § 1129(a)(5). Accordingly, the Plan fails to comply with Section 1129(a)(5) and should not be confirmed.[7]

---

[7] Disclosures about officers, directors, management, and compensation are vague at best. (Plan, Art. II(H)-(I) (mentioning Management Incentive Plan being approved by way of the Confirmation Order and providing that existing management will enter into new employment agreements); II(R) (providing that directors and officers will be disclosed to the extent reasonably practicable) & II(S) (providing for assumption of existing agreements with current and former officers and directors or, alternatively, new agreements with former officers and directors).)

11106332.2

Objectionable Unexpired Lease-Related Provisions

18. The Plan provides that the Lease shall be assumed with the corresponding Cure Claim paid on the Effective Date. (Plan, Art. III(B)(6)(b) & Art. V(C).) That, however, contradicts the Agreed Order, providing for payment in full of IRC's Cure Claim on or before June 30, 2019. Any assumption of the Lease should be governed by the Agreed Order and any order that might be entered in respect of the Assumption Motion and Assumption Objection, and not the Plan or Confirmation Order.

19. Similarly, the Plan provides that Unexpired Leases may be assigned to an Affiliate of Debtor. (Plan, Art. V(A).) There is no mention, however, of the identity of the potential assignee or its ability to satisfy the requirements of Section 365(f), including the ability to provide adequate assurance of its future performance. Accordingly, the Plan should not be confirmed because the Plan and Debtor fail to satisfy Sections 1129(a)(1) (requiring the Plan to comply with applicable provisions of the Bankruptcy Code) and 1129(a)(2) (requiring the Debtor to comply with applicable provisions of the Bankruptcy Code).

20. The Plan also provides that "Holders of Claims and Holders of Interests shall not be entitled to interest . . . on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date." Landlord is entitled to interest on past due amounts under the Lease. To the extent that the Lease is assumed after June 30 (the deadline for the Cure Claim to be paid), Landlord is entitled to payment in full of such interest as part of the Cure Claim pursuant to Section 365(b)(1)(A).[8]

21. Finally, the Plan provides that "[a]ny default or 'event of default' by the Debtor with respect to any Claim . . . that existed immediately before or on account of the Filing of the

---

[8] To the extent that Debtor attempts to assume the Lease pursuant to the Plan as opposed to the Assumption Motion, Landlord incorporates its Assumption Objection by reference herein.

11106332.2

Chapter 11 Case shall be deemed cured (and no longer continuing) as of the Effective Date." (Plan, Art. VII(A).) This directly contradicts Debtor's obligation to pay cure claims in full in order to assume Unexpired Leases, causing the Plan and Debtor to run afoul of Section 365(d)(1)(A) and, in turn, render the Plan non-confirmable pursuant to Section 1129(a)(1)-(2). It is entirely possible that the Assumption Motion and Assumption Objection will be pending as of the Effective Date, if the Plan is confirmed (which it should not be). Nothing in the Plan, including Article VII(A), should prejudice Landlord with respect to that contested matter or otherwise relieve Debtor of its obligations under Section 365.

<u>Potentially Prejudicial Release, Exculpation, and Injunction Provisions</u>

22.     The Plan contains very broad release, exculpation, and injunction provisions benefitting, among others, insiders of the Debtor. (Art. VII(C)-(E).) None of these provisions should affect or be interpreted to affect any obligations of any third parties, including the Released Parties and Exculpated Parties, with respect to the Lease. Similarly, none of these provisions should enjoin Landlord from pursuing any obligations of any third parties, including the Released Parties and Exculpated Parties, in connection with the Lease. By way of example only, if a guaranty were delivered to Landlord by a Released Party as a condition to any assumption of the Lease, nothing in the Plan should later be construed to affect Landlord's rights in respect of such guaranty in the event Debtor later defaults.

WHEREFORE, Landlord respectfully requests that the Court enter an Order (a) denying confirmation of the Plan; and (b) granting Landlord such other and further relief to which it is justly entitled.

11106332.2

Dated: July 19, 2019                        Respectfully submitted by:

/s/ Rocco I. Debitetto
Rocco I. Debitetto (0073878)
Hahn Loeser & Parks LLP
200 Public Square, Suite 2800
Cleveland, Ohio 44114
Telephone: (216) 621-0150
Facsimile: (216) 241-2824
E-mail: ridebitetto@hahnlaw.com

*Counsel for Movant, IRC Newport Pavilion, L.L.C.*

**CERTIFICATE OF SERVICE**

      I hereby certify that true and correct copies of the foregoing were served upon the parties identified on the attached Service Lists on this 19th day of July 2019 by the method indicated.

/s/ Rocco I. Debitetto
*One of the Attorneys for Movant, IRC Newport Pavilion, L.L.C.*

11106332.2

SERVICE LISTS

**Electronic Mail Notice List**

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- Asst US Trustee (Cin)    ustpregion09.ci.ecf@usdoj.gov

- John C Cannizzaro    John.Cannizzaro@icemiller.com, Thyrza.Skofield@icemiller.com

- Casey M Cantrell Swartz    cswartz@taftlaw.com, docket@taftlaw.com;lsutton@taftlaw.com

- Rocco I Debitetto    ridebitetto@hahnlaw.com, hlpcr@hahnlaw.com;cmbeitel@hahnlaw.com

- Gregory D Delev    bankruptcy@delevlaw.com

- Steven L Diller    steven@drlawllc.com, kim@drlawllc.com;eric@drlawllc.com

- Barry F Fagel    bfagel@lindhorstlaw.com

- Brian T Giles    Brian@gilesfirm.com, bgiles3434@gmail.com

- Douglas N Hawkins    doug.hawkins@usdoj.gov, cathy.cooper@usdoj.gov

- Benjamin M Rodriguez    brodriguez@fp-legal.com, kmorales@fp-legal.com

- John A Schuh    jaschuhohecf@swohio.twcbc.com

- Jason M Torf    jason.torf@icemiller.com

**Manual Notice List**

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service).

Belden Hill Private Equity, Inc.
160 Beldon Hill Road
Wilton, CT 06897

Coca-Cola Bottling Co. Consolidated
PO Box 602937
Charlotte, NC 28260

Dennis and Marsha Angelillo
370 Coppermill Road
Weathersfield, CT 06109

Edward Beadle
168 Langford Lane
East Hartford, CT 06118

F Collett, LLC
3702 Fairfax Avenue
Dallas, TX 75209

Giles & Lenox LLC
1018 Delta Avenue
Suite 202
Cincinnati, OH 45208

12

11106332.2

Gordon Food Service
4980 Gateway Blvd.
Springfield, OH 45502

IRC Retail Centers
PO Box 6351
Carol Stream, IL 60197

Marshmallow Products
684 Dunwoodie Drive
Cincinnati, OH 45230

Nyhart Business Interest, LLC
575 Indian Hill Trail
Cincinnati, OH 45243

Plante & Moran, PLLC
16060 Collections Center Drive
Chicago, IL 60693

Steven A. Crawford
423 Knollwood Drive
Highland Heights, KY 41076

Thomas B. Kearney
7844 Classics Drive
Naples, FL 34113

American Express National Bank
c/o Becket and Lee LLP
PO Box 3002
Malvern, PA 19355-0701

Guggenheim
3000 Internet Blvd. #570
Frisco, TX 75034

New Century Dynamics, Inc.
9370 Stoney Ridge Lane
Johns Creek, GA 30022

Phillip Fanning
62 Jaques Lane
South Windsor, CT 06074

Robert Dames
444 Ashworth Ct.
Cincinnati, OH 45255

The Fortuity Group
151 West Congress Street
Suite 420
Detroit, MI 48226

UBS Financial Services
184 Limberty Corner Road
1st Floor
Warren, NJ 07059

BDO USA, LLP
Laurence W. Goldberg, Dr., Receivables Mg
4135 Mendenhall Oaks Parkway
Suite 140
High Point, NC 27265

Greater Comfort Heating & Air
2001 Monmouth Street
Newport, KY 41071

11106332.2